IN RE LUCAS, ALLEGED DEPENDENT CHILD.

(No. 12-84-2—Decided November 19, 1985.)

*Daniel Gerschutz,* prosecuting attorney, and *Randall Basinger,* for appellee Putnam County Welfare Department.

*John C. Keenehan,* for appellant Nancy Lucas.

*Paul Cunningham,* guardian ad litem for Angela Lucas.

COLE, J. This is an appeal from a judgment of the Juvenile Division of the Court of Common Pleas of Putnam County wherein that court divested the natural parents of Angela Lucas, a dependent child, of all parental rights and responsibilities and granted permanent custody of said minor child to the Putnam County Welfare Department.

The case covers an extended period of time. The original complaint charging dependency (amended on November 4, 1981) was filed on October 9, 1981 when the child was approximately one year old. The father, Chris Lucas, was allegedly "unavailable" at the time and summons was served only upon the mother, Nancy Lucas. Subsequently, the father was served and at a hearing on February 15, 1984 the father appeared personally and may be deemed to have entered appearance prior to the judgment from which appeal is now taken by the mother. The father does not appeal. The mother was represented by the same counsel throughout the proceedings.

On November 4, 1981, a judgment entry was filed stating, "Mrs. Lucas waived service of summons of the summons and amended complaint. Mrs. Lucas admitted to the amended complaint and the court found Angela Lucas to be a dependent child."

Temporary custody was granted to the Putnam County Welfare Department. An initial reunification plan was filed, pursuant to R.C. 2151.412(A) and (B), on November 12, 1981. A comprehensive plan prepared pursuant to R.C. 2151.412(C) was filed on December 8, 1981. On motion of the mother, the plan was modified on January 22, 1982. A second comprehensive reunification plan was filed on February 2, 1982 and objections to it were filed by the mother. This was apparently approved once, but on motion approval was vacated and on September 15, 1982 the welfare department filed a request for permanent custody. Summons was served on the mother containing the notice required under R.C. 2151.353(C). Chris Lucas, the father, was likewise served.

On March 14, 1983, the trial court ordered a new comprehensive reunification plan and a motion to dismiss filed by the mother was continued for further consideration. Various other motions

were filed and determined at this stage. Parenthetically, we note that a new comprehensive reunification plan, on June 28, 1983, was submitted to the court; Nancy Lucas, the mother, was specifically ordered to seek adequate housing. On July 22, 1983, the trial court ordered that custody continue with the welfare department "pursuant to the current amended reunification plan." Presumably this was directed to the continued motion for permanent custody then still outstanding.

On November 9, 1983, the welfare department filed a second motion for permanent custody. On December 2, 1983, the mother requested discovery pursuant to Juv. R. 24 and on December 13 the welfare department supplemented discovery responses several times previously made during the course of the case.

On December 16, 1983, the mother filed a motion to vacate trial date, a motion to dismiss directed to the allegations in the motion for permanent custody, a motion to dismiss because there was no timely administrative review and no good faith effort by the welfare department to achieve reunification. A motion for continuance was filed January 10, 1984.

On January 10, 1984 (based on a hearing on December 16, 1983), an entry was filed vacating the trial date of December 21, 1983 and substituting, by agreement of the parties, a pretrial hearing; the motions to dismiss were overruled as well as the motion for a continuance and "[t]he court finds that a firm date agreed to previously by all parties on the merits of this cause is January 11, 1984 * * *."

Apparently, there was a further continuance and the motion for permanent custody was finally heard on January 21, 1984 in an adjudicatory phase and February 15, 1984 in a dispositional phase resulting in the order from which appeal is taken by the mother.

Before we consider the various assignments of error, it is necessary, because of the procedures followed in the trial court, to analyze and determine the statutory procedures now governing the disposition of dependent children. These were substantially modified by statutory amendments effective October 24, 1980.

Previous to that date, the change from a disposition order (under the then-existing provisions of R.C. 2151.353, for temporary commitment to an appropriate agency) to a permanent commitment to that agency required the filing of a new complaint and an adjudication of neglect at the subsequent time. Thus, there was normally a second adjudication of neglect or dependency. See *In re Fassinger* (1975), 42 Ohio St. 2d 505 [71 O.O.2d 503].

Now, however, the statutory procedure proceeds from a *single* determination of dependency under R.C. 2151.35. Thereafter, the trial court, depending upon the circumstances and the content of the complaint may:

1. Leave the child in the custody of the parents (R.C. 2151.353[A][1]);

2. Commit the child to the temporary custody of a welfare department (R.C. 2151.353[A][2]);

3. Commit the child to temporary custody of other agencies (R.C. 2151.353[A][3]); or

4. Commit the child to the permanent custody of the county department of welfare, etc. (R.C. 2151.353[A][4]).

To utilize option 4 requires special considerations and allegations. Options 2 and 3 keep the dispositional phase of the proceeding open for further action by the trial court. Under either of these two options during this continued dispositional phase there is provision for reunification efforts outlined in R.C. 2151.412. If these efforts are successful presumably there would be, on motion, a termination of the temporary custody, this being inherent in the concept of temporary custody. However, if the reunification is not successful the welfare department may request by motion that permanent custody be awarded to it.

In R.C. 2151.353(B) appears this provision:

"If after making disposition as authorized by division (A)(2) or (3) of this section, a motion is filed in accordance with section 2151.413 of the Revised Code, which motion requests permanent custody of the child, the court may grant permanent custody of the child to the movant in accordance with section 2151.414 of the Revised Code."

No new complaint is now required. The single finding of dependency (or neglect) is sufficient to cloak the court with continuing jurisdiction in effecting final disposition of the cause. The sections to which reference is made provide that a county department of welfare to whom temporary custody of a child has been granted may file "a motion * * * requesting permanent custody of the child * * *."

There are no specific requirements set forth in the statute as to the content of the motion other than that it constitutes a request for permanent custody.

R.C. 2151.414 first sets forth the provision for notice. No issues are here raised as to these requirements by the appeal.

The statute then prescribes certain "determinations" to be made by the trial court in R.C. 2151.414(A) as follows:

"* * * the court * * * shall conduct a hearing to determine all of the following:

"(1) If the county department, board, or certified organization has made a good faith effort to implement the initial and comprehensive reunification plans for the child that were approved by the court pursuant to section 2151.412 of the Revised Code;

"(2) If the parents have acted in such a manner that the child is a child without adequate parental care, and will continue to act in the near future in such a manner that the child will continue to be a child without adequate parental care. In making this determination, the court shall consider all relevant factors, including but not limited to, the following considerations:

"(a) The extent to which the parents of the child have conformed to the initial and comprehensive plans for the child that were approved by the court pursuant to section 2151.412 of the Revised Code and the extent to which the parents have fulfilled their obligations under the plans;

"(b) Any existing emotional or mental disorders of the parents and the anticipated duration of the disorders;

"(c) Any physical, emotional, or sexual abuse of the child by the parents that occurs between the date that the original complaint alleging abuse was filed and the date of the filing of the motion for permanent custody;

"(d) Any existing excessive use of intoxicating liquor or drugs of abuse by the parents;

"(e) Any physical, emotional, or mental neglect of the child by the parents that occurs between the date that the original complaint alleging neglect was filed and the date of the filing of the motion for permanent custody.

"(3) If it is in the best interest of the child to permanently terminate parental rights."

The statute further requires the following specific determination as a prerequisite to action in R.C. 2151.414(B):

"(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that the child is not abandoned or orphaned and the parents have acted in such a manner that the child is a child without adequate parental care, and will continue to act in the near future in such a manner that the child will continue to be a child without adequate parental care, that the child is abandoned and the parents cannot be located, or that the child is orphaned and there are no relatives of the child who are able to take permanent custody. The court may consider the wishes of the child in relation to the motion for permanent custody and the custodial history of the child as factors in making its determination, but the wishes and custodial history of the child shall not control the decision of the court. If the court grants permanent custody of a child to a movant under this division, the court, upon the request of any party, shall file a written opinion setting forth its findings of fact and conclusions of law in relation to the proceeding."

A question first arises as to the nature of this hearing. Normally it would seem to be part of the continuing dispositional phase of the proceeding. However, the following definitions appear in Juv. R. 2:

"(1) 'Adjudicatory hearing' means a hearing to determine whether a child is a juvenile traffic offender, delinquent, unruly, neglected, or dependent or otherwise within the jurisdiction of the court *or whether temporary legal custody should be converted to permanent custody.*

"* * *

"(8) 'Dispositional hearing' means a hearing to determine what action shall be taken concerning a child who is within the jurisdiction of the court." (Emphasis added.)

It thus appears that a hearing under R.C. 2151.414 procedurally is determined to be an *adjudicatory* hearing at least up to the point where the best interests of the child are to be considered. Traditionally, the best interests of the child have been deemed an inappropri-

ate subject for the adjudicatory hearing and appropriate for the dispositional phase. See *In re Baby Girl Baxter* (1985), 17 Ohio St. 3d 229. Thus, in the main, a bifurcated hearing is required. This problem as to hearings under R.C. 2151.414 has been resolved by the Court of Appeals for Butler County in *In re Vickers Children* (1983), 14 Ohio App.3d 201 wherein that court determined that under R.C. 2151.414 bifurcated hearings were required and that in the adjudicatory phase the focus was on the parents and what they have provided and what they will in the near future provide and not on the best interests of the child as such.

This bifurcated hearing was, in fact, held in the present case and the adjudicatory phase was heard prior to a hearing in the nature of a dispositional hearing.

Having now outlined the essential procedural nature of the hearing in the court below and having set forth the essential determinations to be made by the trial court, we now turn to a consideration of the specific assignments of error asserted by the appellant. We shall, however, consider these in an order somewhat different from that utilized by the appellant more closely paralleling the chronological sequence of events.

I. It is asserted in appellant's second assignment of error:

"The trial court erred in not granting the Appellant's Motions to Dismiss filed on December 16, 1983 and December 29, 1983; thereby permitting the Appellee to proceed upon a Motion for Permanent Custody which was completely devoid of the requisite allegations, essential facts, and proper prayer for relief."

This assignment is directed specifically to the legal adequacy of the complaint and motion for permanent custody as we have noted. The original complaint filed October 9, 1981 charged in general terms that the child here involved was dependent. Shortly thereafter a motion to dismiss, based on the inadequacy of the complaint, was filed by the mother. An amended complaint in more specific terms was filed on November 4, 1981 and on that date the child was originally found to be a dependent child and temporary custody was given to the Putnam County Welfare Department.

After many months, the motion for permanent custody was filed on November 9, 1983 requesting that custody be granted to the welfare department.

The appellant basically charges that the court erred in overruling certain motions to dismiss predicated upon the inadequacy of the motion for permanent custody either under the Juvenile Rules or under the applicable statute.

The first ground asserted is that the motion does not set forth the essential facts.

Juv. R. 10(B)(1) refers to the content of the *complaint*. This does not appear to concern a motion for permanent custody as provided for by R.C. 2151.413. Prior to this statute which became effective October 24, 1980, it was at least judicially determined that permanent custody could only be achieved by a complaint and hence as we have noted a second statute now provides for a *motion* for permanent custody where temporary custody has previously been granted to a county department. It states that such a body may "* * * file a motion in the court that made the disposition of the child requesting permanent custody of the child if a period of at least six months has elapsed since the order of temporary custody was issued or the submission of the revised initial plan if the child is an abandoned child whose parents have been located." R.C. 2151.413(A)

R.C. 2151.414 provides for notice of the motion and for hearing, but there is

nothing therein stated as to the content of the motion.

Reference is made to R.C. 2151.27 which, however, deals with the content again of a complaint.

There is no specific reference in the Juvenile Rules to this particular type of motion. Motions in general are the concern of Juv. R. 19 and it requires that the motion "* * * shall state with particularity the grounds upon which it is made and shall set forth the relief or order sought. * * *"

Here the notice sets forth clearly the relief sought:

"* * * hereby requests that this court grant permanent custody to the Putnam County Welfare Department," and "[i]t is therefore respectfully requested that an order be made permanently terminating all residual and other parental rights."

In addition, the grounds are asserted with particularity. It will be noted that all cases cited and concerning the degree of particularity required concern not motions but complaints, pre-dating the 1980 statute which modified the law applicable to this case.

It will also be noted that the two requirements differ. Under R.C. 2151.27, it is the "particular facts" which must be stated. In Juv. R. 10(B), it is "essential facts." However, as to motions there is no reference to "facts." The requirement is a statement with particularity of the "grounds."

In Webster's Third New International Dictionary (1961) 1002, "ground" in the general sense here used is defined as:

"* * * a premise, reason, or collection of data upon which something (as a legal action or an argument) is made to rely for cogency or validity. * * *"

Thus "grounds" is more general and more abstract than "facts" relating more to statements of conditions precedent to action rather than to proof of the fulfillment of such conditions.

Here the welfare department filed two motions each requesting permanent custody. In any event, the grounds stated in the second motion are adequate. The requisite grounds under R.C. 2151.414(B) which are essential to an action are twofold:

1. That the parents have acted in such a manner that the child is without adequate parental care.

2. That this action of the parents will continue in the near future so that the child will continue to be a child without adequate parental care.

These then are the grounds required to authorize action.

It is asserted that the father had abandoned the child. It is asserted that the mother has failed in specific ways to provide parental care, and that she is unable to do so because of mental deficiencies and a lack of initiative in attempting to provide for the needs of the child. Thus, there is necessarily implied a continuation of the absence of parental care by each parent since the failure on the one hand is due to abandonment, on the other to inherent mental deficiency.

While it would perhaps be preferable if the words of the statute had been used, we conclude that here there was adequate compliance with the requirement of stating with particularity the grounds for the request.

It is further asserted that there is no averment that the change of custody would be in the child's best interests. While this is an important ultimate factor to be determined by the court, it is not a fact or prerequisite to the change of permanent custody under R.C. 2151.414(B) as noted above and does not constitute a specific ground for that determination. It is a matter for inquiry at the hearing under R.C. 2151.414(A)(3) but not an essential allegation of the motion.

Finally, appellant asserts there is no prayer requesting permanent custody as required by R.C. 2151.353(B). We have noted above that such a specific request

is contained in the motion. The motion specifically refers to a request, not a prayer.

This assignment of error is not sustained.

II. The appellant's first assignment of error states:

"1. The Trial Court denied the Appellant a Fair hearing, and thereby contravened her due process and equal protection rights as guaranteed by the United States and Ohio Constitutions, by:

"a) allowing the Appellee to utilize voluminous documents and materials which were never disclosed or provided to the Appellant;

"b) allowing the admission of irrelevant, immaterial and incompetent evidence; and

"c) refusing to permit the Appellant to fully cross-examine the Appellee's chief witness."

A. The first issue presented by this assignment of error concerns the appellee's alleged noncompliance with the appellant's discovery requests. The appellant maintains that she was denied her due process right to a fair hearing by virtue of the appellee's failure to provide all the discovery requested.

The due process standards which must be followed in a juvenile court proceeding are embodied in the Rules of Juvenile Procedure. Juv. R. 24 governs the procedures to be followed for obtaining discovery and sets forth the sanctions which a court may, within its discretion, impose upon a party for failing to comply with an order granting discovery. Juv. R. 24(C) provides:

"If at any time during the course of the proceedings it is brought to the attention of the court that a person has failed to comply with an order issued pursuant to this rule, the court may grant a continuance, prohibit the person from introducing in evidence the material not disclosed, or enter such other

order as it deems just under the circumstances."

The rule makes it clear that the court has broad discretion to determine an appropriate response to a party's failure to comply with a discovery order. See 2 Anderson's Ohio Family Law (1975) 100-101, Section 7.13. One authority in this field has remarked that "the interests of the minor must be kept paramount as a court considers its response" and that "[a] finding of contempt directed at an attorney might often be more appropriate than either granting a continuance or excluding the undisclosed material from consideration." *Id.* at 101.

The standards discussed above will be applied to the facts in this case to determine if the trial court abused its discretion. The Supreme Court defined the term "abuse of discretion" in *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219, as follows:

"The term 'abuse of discretion' was defined by this court in *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157 [16 O.O. 3d 169]:

" 'The term "abuse of discretion" connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Steiner* v. *Custer* (1940), 137 Ohio St. 448 [19 O.O. 148]; *Conner* v. *Conner* (1959), 170 Ohio St. 85 [9 O.O. 2d 480]; *Chester Township* v. *Geauga Co. Budget Comm.* (1976), 48 Ohio St. 2d 372 [2 O.O. 2d 484].' "

The appellee filed a motion for permanent custody in the instant case on November 9, 1983. On December 2, 1983, the appellant filed a motion for discovery to which the appellee responded by furnishing said discovery on December 13, 1983. In a judgment entry filed January 10, 1984, the trial court vacated the previous trial date of December 21, 1983 and ordered the hearing to be held on January 11, 1984, as agreed to by the parties. The additional

time was to be used by the parties to complete discovery and case preparation.

The appellant objects that the documents marked as Joint Exhibit No. 1 and the document marked Guardian's Exhibit A were not provided to her as part of pretrial discovery. Joint Exhibit No. 1 is a file, several hundred pages in length, consisting of caseworker's notes primarily by Becky Leader, letters of inquiry written by Becky Leader concerning Mrs. Lucas' eligibility for various forms of public assistance, copies of medical reports from examinations performed on Angela Lucas, and copies of medical reports from the physicians who examined Nancy Lucas. When comparing the documents contained in Joint Exhibit No. 1 with the documents, filed with the court in response to previous discovery requests from this case's inception in October 1981, this court fails to see that the appellant was deprived of any documents. It appears that the appellant received the majority, if not all, of the documents in Joint Exhibit No. 1 from prior discovery requests. Nowhere does the appellant specify the documents she allegedly did not receive. Furthermore, the appellant does not state how the documents are material to her case. Finally, the trial court stated in its Findings of Fact that "multiple discovery proceedings were had by the mother giving her complete access to the welfare files on her child." We agree with this finding by the trial court.

The trial court did not abuse its discretion by allowing Joint Exhibit No. 1 to be admitted into evidence. The trial court had already granted one continuance for the purpose of completing discovery. It is clear when examining the proceedings in this case from its inception that the appellant received access to the documents contained in the welfare department's files. In light of these facts, we conclude that the trial court's ruling was not unreasonable, arbitrary, or unconscionable.

We turn next to a consideration of the trial court's decision to overrule the appellant's motion to suppress Guardian's Exhibit A. This exhibit is a two-page typewritten document containing a summary of the efforts of the various caseworkers who worked with Mrs. Lucas in this case. The appellee stated in its argument to the trial court that the document was compiled as a part of the trial preparation. The document does not come within the list of items which are to be produced during discovery under Juv. R. 24(A). In addition, the author of the document, Mrs. Leader, was available for questioning regarding the accuracy of the document. The document was prepared to aid the trial court in reviewing the involvement of the welfare department in this case. As such, the trial court did not abuse its discretion in overruling the appellant's motion to suppress Guardian's Exhibit A.

In this respect then the assignment of error is not well-taken.

B. It is further asserted that the trial court allowed the admission of irrelevant, immaterial and incompetent evidence.

1. It is charged that the trial court consistently admitted hearsay evidence at the adjudicatory hearing. In *In re Vickers Children, supra,* the court stated at 206:

"This court has previously held that hearsay is not admissible in adversarial juvenile court proceedings at which a parent, charged with neglecting his or her children, may lose the right to custody of his or her children. In *Sims* [*In re Sims* (1983), 13 Ohio App. 3d 37], we held that, as the judge acts as the factfinder and is presumed to be able to disregard hearsay statements, the person against whom the hearsay statements were admitted in such a case must show that the statements were prejudicial or were relied upon by the judge in making his decision."

Generally, the specific instances re-

ferred to by the appellant do constitute hearsay. However, most of these instances concern testimony that is essentially cumulative in nature and we will refer again, later, to these. The major objection, however, is to the admission of Joint Exhibit No. 1 to which reference has been made. It contained various caseworker case notes as well as letters, reports and examinations. However, the trial court limited that portion of the exhibit which was in fact admitted and which he subsequently considered. At page 140 of the transcript it states:

"The Court will allow them to be introduced when offered, and only the portion that is pertinent."

At page 188, it states:

"The Court will only consider the case notes that touch upon the matter in issue * * *. I am not going to separate it or try to separate it. I am only going to take the notes that are of interest and not worry about the others."

Subsequently, in its findings of fact and conclusions of law issued after the adjudicatory hearing, the trial court stated:

"The court further states that in arriving at its conclusion the Exhibits containing case worker's notes were utilized, *only as to said case notes* and not to any other matter contained therein." (Emphasis added.)

Thus, of all the exhibits only caseworker's case notes were considered by the trial court.

As to authentication Evid. R. 901(A) reads:

"(a) General provision. The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Here, continued reference to the case notes by the caseworkers who testified during the course of both cross-examination and direct examination and the internal evidence contained in the notes admitted is sufficient to establish that the case notes are in fact the case notes kept by the caseworkers in the course of their duties, although no direct testimony of identification appears.

As to admissibility under an exception to the general hearsay exclusion, Evid. R. 803 reads in part:

"(8) *Public records and reports.* Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness."

It would appear that these are a compilation of data and reports of the Putnam County Welfare Department of matters observed and recorded pursuant to its duty to administer the laws pertaining to dependent or alleged dependent children and there is no circumstance indicating lack of trustworthiness. Under the rule the case worker's case notes, the only portion of the Joint Exhibit considered by the trial court, would be admissible.

As to the other asserted instances of hearsay, generally the objections were made *after* the answer had already been given by the witness and no motion to strike the response was made.

We thus find no admission of hearsay testimony prejudicial to the appellant.

The appellant also objects to the admission of certain testimony as irrelevant.

"Relevant evidence" is defined by Evid. R. 401 which reads:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the ac-

tion more probable or less probable than it would be without the evidence."

Relevant evidence is generally admissible; irrelevant evidence is not. Evid. R. 402 and 403.

The objection generally concerns the scope of the examination as to the time period involved, the appellant objecting to inquiry as to events prior to the most recent reunification plan. The issues and required determination provided for by R.C. 2151.414 are broad in scope and subsection (A)(2)(e) permits a court to consider:

"Any physical, emotional, or mental neglect of the child by the parents that occurs between the date that the original complaint alleging neglect was filed and the date of the filing of the motion for permanent custody."

We have examined the portions of the record to which reference is made by appellant's brief and find no prejudicial error in the admission of this evidence.

This portion of the assignment of error is not well-taken.

C. Finally, the appellant argues that she was denied the opportunity to fully cross-examine the appellee's chief witness, Mrs. Leader. It is within the trial court's discretion to determine the extent to which a witness may be cross-examined. 52 Ohio Jurisprudence 2d (1962) 499, Trial, Section 17. The record of the proceedings reveals that the appellant extensively cross-examined and recross-examined Mrs. Leader. Any limitations placed on the appellant's cross-examination occurred to avoid repetition and to save the court's time. We therefore conclude that the appellant was given the opportunity to fully cross-examine the appellee's witness.

We then conclude generally that the assignment of error is not sustained.

III. In her fifth assignment of error the appellant asserts:

"The trial court erred in granting permanent custody when the appellee had been seriously derelict in its duty to assist in the rehabilitation of the Appellant's family unit."

The trial court found:

"Submitted plans and exhibits plus discovery would indicate that Welfare had made a 'good faith' effort as set out in O.R.C. Section 2151.414(A)."

Further,

"The Court further finds that the Welfare [Department] has put forth great effort and constantly made themselves available as well as their facilities to Mrs. Lucas; that they have continously attempted to help her to care for herself and her child in a proper manner; that this help was largely rejected by the mother * * *."

The trial court was here the trier of fact. There were conflicts in the testimony and as trier of fact it was the duty of the trial court to resolve these conflicts and determine the credibility of the witnesses. There was ample evidence to sustain the findings of the trial court.

The assignment of error is not well-taken.

IV. In the seventh assignment of error, the appellant asserts:

"The decision is against the weight of the evidence."

The same considerations as noted in Part III above apply. There was adequate evidence before the trial court to sustain its findings and the ultimate disposition of the child.

The assignment of error is not well-taken.

V. In the third assignment of error the appellant asserts:

"The trial court erred by considering the child's best interests at the adjudicatory hearing."

It is clear that the child's best interests are the ultimate guiding principle in the disposition of the child but in the adjudicatory phase of the hearing it is not a factor. See *In re Vickers Children, supra.* The appellant here charges that the trial court violated this principle and did consider the best in-

terests of the child during the adjudicatory phase of the hearing.

The objection is specifically raised as to the admission of certain testimony stating the improved condition of the child after the child had been placed in foster care. Such testimony bears not only upon the condition of the child but also upon the parental care which the mother had previously provided and demonstrates the inadequacy of that care. It establishes that the physical ills of the child were not personal to the child but were a product of lack of proper care. There is, moreover, nothing to demonstrate affirmatively that the trial court at this stage of the proceedings specifically considered the best interests of the child as distinguished from the other statutory determinations prescribed by R.C. 2151.414.

The assignment of error is not well-taken.

VI. In her sixth assignment of error the appellant asserts:

"The trial court violated Ohio Revised Code 2151.412(A)."

The appellant asserts that on November 10, 1981, the welfare department completed and filed an initial plan but did not prior to doing so make a reasonable attempt to consult with all parties as required by R.C. 2151.412(A).

We are cited to no evidentiary basis for this contention as to a lack of consultation. So far as the present record is concerned there is no evidence to demonstrate the lack of reasonable attempt to consult.

Moreover, the initial plan has been long ago superseded by comprehensive reunification plans, prepared in accordance with paragraph (D) of R.C. 2151.412.

The original papers demonstrate that the child was found to be dependent on November 4, 1981 and that an initial plan was prepared on November 10, 1981, was approved by the trial judge on November 12, 1981 and "incorporated into the journal entry dated 11-4-81." We have no evidence as to the date the order of disposition was executed.

Under these circumstances, we find that the assignment of error is not sustained.

VII. In the fourth assignment of error the appellant asserts:

"The findings of fact made by the trial court do not establish that the Appellant's child was without adequate parental care and that she will continue to act in the near future in such a manner that her child will continue to be a child without adequate parental care."

It is appellant's argument that R.C. 2151.414 requires that the trial court make certain specific findings as a predicate for disposition by termination of the parental rights of the natural parents and in particular that it did not find that the parents "will continue to act in the near future in such a manner that the child will continue to be a child without adequate parental care."

Appellant further asserts that the findings only concern the current as distinguished from future lack of parental care because the appellant has, in fact, completed and accomplished several features of the current reunification plan, i.e., completed a budget and obtained a new residence.

In In re Covin (1982), 8 Ohio App. 3d 139, the court stated at 141:

"Finally, the appellant's assertion that the lower court failed to include within its judgment entry any statements indicating that it had made the determinations required by R.C. 2151.414(A) is, although an accurate observation, not an appropriate basis for reversal. R.C. 2151.414(A) lists numerous determinations to be made by the lower court during a hearing upon a motion for permanent custody. The statute, however, does not require these determinations to be specifically listed in the lower court's judgment entry, and thus the failure to do so is not error. Such

determinations would be appropriately included within the court's findings of fact and conclusions of law if they were requested by a party below. For the above-stated reasons the appellant's first assignment of error is overruled."

In its journal entry of February 15, 1984, the trial court incorporated Findings of Fact and Conclusions of Law previously made at the conclusion of the adjudicatory phase and further stated:

"The court hereby finds that the requirements for permanent custody have been met under Ohio Revised Code Section 2151.414 and permanent custody is granted to the Putnam Welfare Department."

This in effect incorporates by reference the specific findings required by R.C. 2151.414 and finds they have been established. In its findings previously filed the trial court had found:

"1. That the evidence clearly indicates that this mother cannot cope with the care of herself adequately and not even minimally for the care of her daughter.

"2. That Welfare initiated reunification plans tailored to mother's wishes as far as possible which were rejected by 'mother'."

These facts among others were found to be based on "clear and convincing evidence." In the journal entry directed to the adjudicatory phase the court further found that the father, Chris Lucas, who has not appealed, had abandoned the child and that the mother was unable to properly care for the child due to her "complete lack of mental motivation."

Both abandonment and lack of parental ability are conditions that may be reasonably considered as continuing in nature and interpolating these specific elements into the broader finding that the requirements of R.C. 2151.414 have been met we conclude that the trial court adequately, but in a somewhat oblique manner, made all the findings required as a basis for terminating the appellant's parental rights.

Appellant moreover objects that she had, in fact, complied with her reunification requirements. However, the problem was not merely the physical environment but the appellant's constant failure over many months to find a more appropriate environment. The new housing, as the court finds, was obtained, not to comply with the needs of the child, but "the main reason for her move was the freezing of pipes" in the old residence. This in itself demonstrates the lack of inner motivation, the move having been primarily accomplished by accidental pressure and necessity. It is the inability to cope, found to be a constant characteristic of the mother's efforts, and her lack of motivation to change that constitute the basis for a projection into the future of a lack of parental care. As we have already indicated there was ample evidence to sustain this finding.

We find that the trial court made an adequate and sufficient determination of the statutory prerequisities to the termination of parental rights under R.C. 2151.414.

We find no merit in the assignment of error.

*Judgment affirmed.*

GUERNSEY, P.J., and MILLER, J., concur.