In re Foust et al.

(No. 3-87-27—Decided
February 1, 1989.)

*Sara Logsdon-Babich,* for appellant Pam Foust Blevins.

*Stanley Flegm,* prosecuting attorney, and *Brad S. Starkey,* for appellee Crawford County Children Services Board.

Guernsey, J. This is an appeal by Pam Foust Blevins, the natural mother of Robert Foust, born July 27, 1978, William Foust, born May 2, 1980, and Chad Foust, born April 17, 1982, from a judgment of the Juvenile Division, Court of Common Pleas of Crawford County, entered on September 9, 1987, incorporating the court's decision of August 31, 1987, finding that the ap-

pellant "has acted in such a manner that the children are without adequate parental care, as defined by" R.C. 2151.011(B)(17), "that said condition will continue into the future," and awarding permanent custody of the children to the Crawford County Children Services Board.

William Foust, the adoptive father of Robert Foust and the natural father of the two younger boys, was also named as a party to the proceedings and the judgment of the trial court found similarly as to him, but he has not appealed therefrom. He had been married to the appellant when each of the children were born, but in 1984 they were divorced, with appellant being granted custody of the children. On April 3, 1987, while these proceedings were pending, appellant married, and now lives with one Eddie Blevins, who was unemployed at the time, and was the father of two children by a former girlfriend, who retains their custody. Blevins is not a party to these proceedings.

On January 16, 1985, the Crawford County Children Services Board (the "board") filed its complaint in the lower court, alleging that the children appear to be dependent children in violation of R.C. 2151.04, and praying for "immediate emergency temporary custody" of the children of the appellant. On that same date a referee of the court made an ex parte finding and recommendation that emergency temporary custody be granted to the board until a hearing on the matter of temporary custody could be held. On January 30, 1985, the court approved and adopted the finding and recommendation of the referee.

The matter was set for hearing on the complaint to be held on January 24, 1985. Service was had upon appellant but not upon the father of the children, he being in Florida. Nevertheless, the hearing proceeded without the father. In the referee's report and recommen-

dations of that date appear, among other things not here material, the following:

"I * * * have heard the testimony of the witnesses and considered all evidence in this cause heretofore referred to me, and upon consideration thereof I hereby report and find:

"* * *

"(4) Each party against whom allegations were made did make answer to said allegations by admitting same.

"(a)  Admission accepted upon determination that same was made after compliance with Juv. R. 29(D).

"(5)  Allegations of complaint sustained by the degree of proof required by Juv. R. 29(E)(4).

"Recommendations:

"(1) That child be adjudged dependent child.

"(2) That dispositional hearing proceed forthwith on January 24, 1985.

"(3) That said child pay costs herein and temporary custody continued with Children Services until home passes inspection. Attached initial plan also adopted as part of this Journal Entry."

On February 7, 1985, the court signed the following "Judgment Order" appearing at the bottom of the "Report and Recommendations of Referee":

"Upon consideration of the Referee's Report and Recommendations, together with all matters pertaining thereto, and it being made to appear that none of the parties herein has, within 14 days of the filing thereof, served and filed written objections thereto as provided by Juv. R. 40(D)(2), it is therefore ordered, adjudged and decreed that said Report and Recommendations be, and the same hereby are, confirmed, made a part hereof and adopted as the judgment order herein."

No further court proceedings took place with the exception of various filings and approvals of the reunification plans until July 2, 1986, at which time the board filed its request for a review and further disposition hearing. On August 15, 1986, the court reviewed the matter and ordered that "continued wardship of the child is necessary and should extend until December 30, 1986," with the father to pay support of the children to the Crawford County Bureau of Support by way of wage assignment.

On January 5, 1987, the board filed its motion reciting that the children are still "dependent children" as defined by R.C. 2151.04, and requesting that in their best interest their permanent custody be granted to the board. This motion was initially set for hearing on February 6, 1987, then continued to April 3, 1987, and rescheduled to, and finally convened on, April 22, 1987, with both parents in attendance. At that time the court overruled a motion of the appellant that the court order an investigation of her then residence to determine whether it was a fit and habitable place for the minor children to reside and announced that under "the statute" all evidence in the proceedings would be limited to factual matters occurring "between the approval of the Reunification Plan and the filing of the Motion" for permanent custody on January 15, 1987. Throughout the trial on the motion for permanent custody, which was again continued midway to June 3, 1987, the court, over the appellant's objection, rejected admission and consideration of evidence of events and circumstances occurring after January 15, 1987, whereupon appellant would proffer such evidence into the record. On August 31, 1987, the trial court rendered its decision, thereafter on September 9, 1987, incorporated by reference in its journal entry of judg-

ment, finding that the "evidence of the events from January 16, 1985, through January 15, 1987, is clear and convincing that the mother has acted in such a manner that the children are without adequate parental care, as defined in Ohio Revised Code Section 2151.011 (B)(17), and that said condition will continue into the future," and, without further hearing, ordering permanent custody granted to the board.

It is from the judgment, so rendered, that the appellant appeals to this court assigning error of the trial court (1) in not admitting evidence of her conduct after the filing of the motion for permanent custody because such evidence is admissible to show the future conduct of a parent, and (2) in that its "decision" is against the manifest weight of the evidence.

Both of these assignments of error involve a determination of what issues were being tried on the merits after the motion for permanent custody was filed. An examination of the juvenile statutes discloses that the hearing was governed by the provisions of R.C. 2151.414, which governs hearings on motions for permanent custody made by an agency which had received *temporary custody* of a child under a disposition order made under the provisions of R.C. 2151.353 where a reunification plan had been approved by the court pursuant to R.C. 2151.412. R.C. 2151.414 prescribes:

"(A)  Upon the filing of a motion for permanent custody of a child by a county department, board, or certified organization that has temporary custody of the child, the court shall give notice of the filing of the motion and of the hearing, in accordance with section 2151.29 of the Revised Code, to all parties to the action, which notice shall contain a full explanation that the granting of permanent custody permanently divests the parents of their parental rights and a full explanation

of their right to be represented by counsel and to have counsel appointed pursuant to Chapter 120. of the Revised Code if they are indigent, and shall conduct a hearing to determine all of the following:

"(1)  If the county department, board, or certified organization has made a good faith effort to implement the initial and comprehensive reunification plans for the child that were approved by the court pursuant to section 2151.412 of the Revised Code;

"(2)  If the parents have acted in such a manner that the child is without adequate parental care, and will continue to act in the near future in such a manner that the child will continue to be a child without adequate parental care. In making this determination, the court shall consider all relevant factors, including but not limited to, the following considerations:

"(a)  the extent to which the parents of the child have conformed to the initial and comprehensive plans for the child that were approved by the court pursuant to section 2151.412 of the Revised Code and the extent to which the parents have fulfilled their obligations under the plans;

"(b)  any existing emotional or mental disorders of the parents and the anticipated duration of the disorders;

"(c)  any physical, emotional, or sexual abuse of the child by the parents that occurs between the date that the original complaint alleging abuse was filed and the date of the filing of the motion for permanent custody;

"(d)  any existing excessive use of intoxicating liquor or drugs of abuse by the parents;

"(e)  any physical, emotional, or mental neglect of the child by the parents that occurs between the date that the original complaint alleging neglect was filed and the date of the fil-

ing of the motion for permanent custody.

"(3) If it is in the best interest of the child to permanently terminate parental rights.

"(B) The court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that the child is not abandoned or orphaned and the parents have acted in such a manner that the child is a child without adequate parental care, and will continue to act in the near future in such a manner that the child will continue to be a child without adequate parental care, that the child is abandoned and the parents cannot be located, or that the child is orphaned and there are no relatives of the child who are able to take permanent custody. * * *"

In view of the requirements of this statute as to determination of *continued* dependency we cannot find that the determination by the court on February 7, 1985, of dependency was conclusive against the appellant in the determination of permanent custody. See, also, *Elmer* v. *Lucas Cty. Children Serv. Bd.* (1987), 36 Ohio App. 3d 241, 523 N.E. 2d 540.

It is apparent from the trial court's decision that it properly recognized that R.C. 2151.414 was applicable both as to issues and procedure in the trial of the board's motion for permanent custody.

Although the Supreme Court held in *In re Baby Girl Baxter* (1985), 17 Ohio St. 3d 229, 17 OBR 469, 479 N.E. 2d 257, that the issue at the adjudicatory stage of a dependency case and the issue of disposition, once dependency has been adjudicated, are separate issues requiring bifurcation of the trial (although the latter may be tried immediately after the former), that case relates to an "initial deter-mination of dependency" as defined by R.C. 2951.04, followed by disposition of custody under the provisions of R.C. 2151.353(A)(4), and does not specifically relate to an adjudication of continued dependency under the provisions of R.C. 2151.414 as grounds for granting permanent custody to an agency named therein which had received temporary custody pursuant to R.C. 2151.353.

In *In re Lucas* (1985), 29 Ohio App. 3d 165, 29 OBR 194, 504 N.E. 2d 472, a case decided by this court in which Judge Cole wrote an extensive opinion analyzing and determining the procedural requirements of R.C. 2151.414 in the trial of a request for permanent custody by an agency which has held temporary custody, *Baby Girl Baxter* was applied, as was *In re Vickers Children* (1983), 14 Ohio App. 3d 201, 14 OBR 228, 470 N.E. 2d 438, and it was held that "a hearing under R.C. 2151.414 procedurally is determined to be an *adjudicatory* hearing at least up to the point where the best interests of the child are to be considered," in that "the best interests of the child have been deemed an inappropriate subject for the adjudicatory hearing and appropriate for the dispositional phase[,]" and that "in the main, a bifurcated hearing is required. * * *" (Emphasis *sic*.) *Lucas, supra,* at 168-169, 29 OBR at 198, 504 N.E. 2d at 476.

In a subsequent decision, *In re Hattery* (Aug. 28, 1986), Marion App. Nos. 9-85-11 and 9-85-12, unreported, we had occasion to, and did, distinguish both *Lucas* and *Vickers,* as they applied to requiring bifurcated hearings under the provisions of R.C. 2151.414, because, among other things, in *Vickers* the appellate court did not reverse for a failure to bifurcate, and in *Lucas* the trial court had bifurcated, so a holding that bifurcation was necessary was not required.

Accordingly, in *Hattery,* a case where there was no bifurcation and the issue of the requirement for same was essential, we held that hearings for permanent custody under R.C. 2151.414 need not be bifurcated. See, also, our subsequent decision in *In re Grimes* (Aug. 2, 1988), Logan App. No. 8-86-10, unreported.

Although we have discussed the matter of bifurcation, we have done so merely in further explanation of the mix of the issue under R.C. 2151.414. In *Hattery,* we said:

"* * * Thus, the exact same type of factors considered in an original dependency adjudicatory hearing are considered during a hearing on the motion under R.C. 2151.414 for permanent custody. The distinction lies in the fact that the latter hearing is broader in scope, in that the best interests of the child are also considered. R.C. 2151.414 appears to be a legislative recognition that some adjudicatory and dispositional issues are so intertwined as to require resolution in one hearing."

It will be noted that R.C. 2151.414 (A)(2)(c), dealing with child abuse, and R.C. 2151.414(A)(2)(e), dealing with child neglect, *seem* to limit the time period governing evidence which may be considered, at least as to child abuse and child neglect. However, it will be noted, and it is our opinion, that these provisions merely confirm the *admissibility* of evidence which may be considered on those issues, and do not establish the *inadmissibility* of evidence. These subsections merely establish relevant factors *to be considered* under subdivision (A)(2), which requires consideration of "all relevant factors, including but not limited to," the considerations set forth thereunder.

As in all cases, all "relevant evidence" as defined by Evid. R. 401 is generally admissible. Evid. R. 402 and 403.

R.C. 2151.414(A) prescribes three issues to be heard and determined. The first issue involves essentially an implied condition precedent to the granting of permanent custody to the movant, and that is whether the movant "has made a good faith effort to implement the initial and comprehensive reunification plans." Although the statute does not specifically say so, it would seem that a failure of good faith in this respect would be grounds for the trial court to deny the motion for permanent custody. The second issue is the basic focus of the adjudicatory phase of the proceedings whether "the parents have acted in such a manner that the child is a child without adequate parental care, and will continue to act in the near future in such a manner that the child will continue to be a child without adequate parental care," is the principal "parental interest" focus of the permanent custody proceedings, and constitutes, when answered in the affirmative, the foundation of the discretionary authority pursuant to the provisions of R.C. 2151.414(B) under which the court *"may* grant permanent custody of a child to a movant." The third issue as to whether it is in the best interest of the child to permanently terminate parental rights is the principal "child interest" focus of the permanent custody proceedings and, in effect, constitutes an implied condition subsequent to the granting of permanent custody to the movant, *i.e.,* even when each of the first two issues are determined in the affirmative, the determination of the third issue as to the best interest of the child in the negative would preclude the granting of permanent custody. Thus, it appears in summary that each of the three issues set forth under subsection (A) of R.C. 2151.414 must be determined in

the affirmative for permanent custody to be granted to the movant and, if not so determined, then it would be incumbent on the trial court to overrule the motion for permanent custody.

In determining the issue raised by the first assignment of error as to the exclusion of appellant's evidence pertaining to facts and circumstances occurring after the filing of the motion for permanent custody and up to the time of trial, the exact wording of the second issue, and the same wording appearing in subsection (B) of the statute, are crucially important, *i.e.,* "the parents have acted in such a manner that the child *is* a child without adequate parental care, and *will continue to act in the near future* in such a manner that the child will continue to be a child without adequate parental care." (Emphasis added.) This determination has at least four facets, the first two being the present status and predictable future status of the child, and the latter two being the action of the parents in creating the child's present status, and their predictable action in creating the child's future status. Equally, the issue of best interest of the child looks far beyond the date of the filing of the complaint. The appellant's conduct from that date to the time of trial would be, if it had probative value, admissible on that issue. Obviously none of these factual questions as to present and future can be determined on evidence alone of facts and circumstances which existed on January 16, 1985, and without relevant evidence of facts and circumstances existing up to and including the time of trial, which in this case did not end until approximately five months after the motion was filed. The importance to both sides of the controversy is highlighted by the appreciation which one must have that the status and relationships of children and parents may rapidly change whether such change is influenced by the action of the parents or by other factors.

We conclude, therefore, that the trial court committed error prejudicial to the appellant, requiring reversal, in limiting her evidence to that which existed on or prior to January 15, 1987, the date when the motion for permanent custody was filed. Indeed, the appellant's proffer of evidence of her conduct after that date showed the existence of later evidence of probative value available on the ultimate issue before the court.

In that the trial court erroneously limited the evidence on the issue before it, the second assignment of error, relating to whether its judgment was manifestly against the weight of the evidence actually received becomes wholly hypothetical and moot, and for that reason alone we find the same without merit.

Accordingly, the judgment of the trial court is reversed and vacated and the cause is remanded thereto for new trial related to current circumstances and determinations of the matters set forth in R.C. 2151.414.

*Judgment reversed
and cause remanded.*

MILLER, P.J., and EVANS, J., concur.

J. THOMAS GUERNSEY, J., retired, of the Third Appellate District, was assigned to active duty pursuant to Section 6(C), Article IV, Ohio Constitution.