[Cite as *In re S.F.*, 2023-Ohio-1900.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| IN RE S.F., ET AL. | : | |
| | | No. 112327 |
| Minor Children | : | |
| | | |
| [Appeal by C.C., Mother] | : | |

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** June 8, 2023

Civil Appeal from the Cuyahoga County Court of Common Pleas
Juvenile Division
Case Nos. AD21900923 and AD21900924

*Appearances:*

Scott J. Friedman, *for appellant*.

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Joseph C. Young, Assistant Prosecuting
Attorney, *for appellee*.

FRANK DANIEL CELEBREZZE, III, P.J.:

{¶ 1} Appellant C.C. ("Mother") brings the instant appeal challenging the trial court's decision to grant permanent custody of her two minor children, D.S. (d.o.b. 12/4/2013) and S.F. (d.o.b. 11/30/2014) (collectively "the children") to the Cuyahoga County Division of Children and Family Services ("CCDCFS" or "the agency.") After a thorough review of the law and record, we affirm.

# I. Factual and Procedural History

{¶ 2} On February 3, 2021, the agency filed a complaint for abuse and dependency seeking temporary custody of the children. The complaint alleged that Mother "has difficulty controlling her emotions" and recently "hit D.S. with a broom while angry," causing D.S. to sustain cuts, abrasions, and bruising on his face. The complaint further alleged that Mother (1) suffers from untreated mental health diagnoses; (2) does not appropriately address D.S.'s behavioral issues; (3) has had her parental rights terminated as to three other children; and (4) does not currently have stable and appropriate housing. The complaint also contained allegations against the respective fathers of each child. Since this appeal pertains only to Mother's parental rights, the details of the fathers' cases will not be discussed herein.

{¶ 3} In May 2021, the court adjudicated the children abused and dependent. Mother agreed to place the children in the temporary custody of the agency until February 2022. The agency prepared a case plan for Mother's reunification with the children that included services for parenting, housing, and mental health treatment. Mother was also allowed weekly supervised visitation with the children.

{¶ 4} In November 2021, the agency filed a motion to extend temporary custody from February 2022 to August 2022. The motion detailed that "Mother is engaged in parenting classes and mental health services through counseling and medication. She needs to remain consistent in her engagement in those services, and secure housing."

{¶ 5} In February 2022, the agency filed an amendment to the case plan terminating Mother's visitation with the children "due to a physical abuse incident between [Mother] and [D.S.] on 1/26/2022." The amendment elaborated that Mother "engaged in blaming, screaming, and yelling at her son for their involvement with [CCDCFS], and proceeded to push her son to the ground."

{¶ 6} In March 2022, the agency filed a "Motion to Amend the Dispositional Prayer from First Extension of Temporary Custody to Permanent Custody." The attached affidavit in support averred that Mother had not consistently engaged in mental health services, was noncompliant with her medications, engaged in but did not benefit from parenting services, and did not have stable housing.

{¶ 7} Trial was initially set for September 29, 2022. On September 23, 2022, Mother filed a "Motion for Six Month Extension" asking the court to allow her an additional six months to complete her case plan, which she claimed to have already substantially completed. This motion was ultimately denied. On September 29, 2022, the court called the case and briefly heard testimony from Jason Vicens, a supervisor at CCDCFS, who testified regarding the agency's reasonable efforts to prevent removal of the children, which Mother stipulated to after the testimony concluded. After Vicens testified, however, the court ultimately continued the matter to November 9, 2022, at the request of Mother's counsel and D.S.'s father. Mother's counsel's continuance was based on an inability to procure witnesses.

{¶ 8} At the commencement of the November trial, Mother's counsel moved to continue the trial because Mother was incarcerated at the time and refused her

transportation to trial. Mother's counsel did not know why Mother refused the transportation, but it was revealed that Mother was incarcerated because of a domestic violence incident that involved Mother's adult, pregnant daughter. The trial court overruled the continuance, determining that it was in the best interest of the children to proceed with trial that day.

{¶ 9} The agency's sole witness was De'Aira Alvis ("Alvis"), a case worker at CCDCFS. Alvis testified regarding Mother's progress with the case plan. Mother was only partially compliant with mental health services and did fully engage in parenting services, though the agency did not feel that she benefitted from them due to the physical incident with D.S. that occurred during visitation. To Alvis's knowledge, before Mother was incarcerated, Mother was residing with a "paramour," but did not allow the agency to view the residence and therefore, Alvis was unable to say whether Mother's current housing was appropriate or not. Mother was charged for a domestic violence incident with her adult, pregnant daughter on August 26, 2022, and was incarcerated at the time of trial as a result of the incident.

{¶ 10} Mother's attorney presented Mario Jones ("Jones") as a witness, who identified himself as Mother's stepbrother. He testified that Mother had resided with him previously, but Mother moved out and got her own housing in an attempt to comply with the agency's requests. He testified that Mother's current residence is a five-bedroom, one-bathroom duplex home in Cleveland and opined that it is suitable and well-kept. Jones, however, noted that he had not had a relationship with Mother's children for about one year. He also testified that he was often present

when Mother spoke to her doctors and counselors and took her to pick up medication, which he observed her taking daily. Jones also testified that Mother lost her job due to the recent domestic violence charges.

{¶ 11} The children's guardian ad litem ("GAL") testified that permanent custody with the agency was in the children's best interest and that both children voiced their preference to remain with their grandmother.

{¶ 12} The resulting judgment entry issued on November 29, 2022, terminated Mother's parental rights as to the children. It is from this judgment that Mother appeals, assigning three errors for our review:

> 1. The juvenile court abused its discretion when it proceeded with a hearing to determine permanent custody without Mother present, in derogation of her rights under the United States and Ohio Constitutions.
>
> 2. The juvenile court abused its discretion when it denied Mother's request for a continuance.
>
> 3. The juvenile court erred in permitting the case worker to testify about statements made by the children's grandmother.

## II. Law and Analysis

{¶ 13} Mother's first and second assignments of errors are related and as such will be addressed together. In her first assignment of error, Mother argues that the trial court abused its direction and violated her right to due process in proceeding with the permanent custody trial even though she was not present. Her second assignment of error suggests that the trial court abused its discretion in refusing to grant a continuance based on her absence.

{¶ 14} At the time of trial, Mother was incarcerated. The transcript reflects that Mother was incarcerated shortly before trial and that the trial court made arrangements to transport Mother from the jail to the court. On the date of trial, however, Mother refused the transportation to the surprise of her own counsel, who requested a continuance because counsel "[did] not know exactly why she did not get in the transport[.]" (Tr. 7.) The court proceeded with the trial, stating that it felt that proceeding was in the best interest of the children and judicial efficiency.

{¶ 15} The failure to raise constitutional objections at the trial level waives the issue on appeal absent a finding of plain error. *In re H.F.*, 8th Dist. Cuyahoga Nos. 90299 and 90300, 2009-Ohio-1798, ¶ 30, citing *State v. Awan*, 22 Ohio St.3d 120, 123, 489 N.E.2d 277 (1986). Plain error exists only when it can be determined that the outcome of the trial would have been different. *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827, ¶ 19, citing *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 894 (1990). "A 'plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse effect on the character and public confidence in judicial proceedings." *Schade v. Carnegie Body Co.*, 70 Ohio St.2d 207, 209, 436 N.E.2d 1001 (1982).

{¶ 16} In support of her argument, Mother cites a Tenth District case finding that "[n]atural parents have a constitutionally protected right to be present at a permanent custody hearing." *In re Sears*, 10th Dist. Franklin No. 01AP-715, 2002-Ohio-368, citing *In re Vandale*, 4th Dist. Washington No. 92 CA 31, 1993 Ohio App.

LEXIS 3465, 7 (June 29, 1993). However, *Sears* explains that this right is not absolute when a parent is incarcerated and that the standard for an incarcerated parent's presence at a permanent custody hearing should be based on the best interest of the children. *Id*. at ¶ 12. The record reveals that Mother was provided an opportunity to be present and transportation; by her own actions, she did not exercise such right and did not provide a reason for refusing transportation, either at the time of trial or now, on appeal. Mother effectively waived this right despite the fact that the court accommodated her. Further, the trial court clearly supported its decision to proceed with the trial based on the best interests of the children, which we also find is aptly supported by the record before us.

{¶ 17} A trial court's decision on a motion to continue is a matter that is entrusted to the broad, sound discretion of the trial court and will not be reversed absent a finding that the trial court abused its discretion. *In re L.S.*, 8th Dist. Cuyahoga No. 95809, 2011-Ohio-3836, ¶ 21, citing *State v. Unger*, 67 Ohio St.2d 65, 67, 423 N.E.2d 1078 (1981). The term abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 450 N.E.2d 1140 (1983); *Johnson v. Abdullah*, 166 Ohio St.3d 427, 2021-Ohio-3304, 187 N.E.3d 463. We are also mindful of Juv.R. 23, providing that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties," and Loc.R. 35(C) of the Juvenile Division, providing that

> [n]o case will be continued on the day of trial or hearing except for good cause shown, which cause was not known to the party or counsel prior to the date of trial or hearing, and provided that the party and/or

counsel have used diligence to be ready for trial and have notified or made diligent efforts to notify the opposing party or counsel as soon as he/she became aware of the necessity to request a postponement. This rule may not be waived by consent of counsel.

{¶ 18} Further, in evaluating a motion for a continuance, courts should note

the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case.

*Unger* at 67-68.

{¶ 19} Here, the record indicates that Mother was aware of the trial date, aware of the provision of transportation, but actively refused the transportation. Mother's counsel stated that she spoke to Mother about two weeks prior, and only recently found out that Mother was incarcerated. Mother did not contact counsel or the court regarding her unavailability for the date of trial on the day of, or prior. Her counsel did not know the reason for Mother's refusal of transportation and therefore requested a continuance. On appeal, Mother does not provide any cause for her refusal, let alone good cause. Despite proper notice, Mother appears to have refused transportation of her own volition.

{¶ 20} On appeal, Mother appears to disagree with the trial court's decision to not continue the matter based on judicial efficiency. Mother argues that the agency only produced one witness and the hearing lasted one hour. However, the journal entry issued immediately after the trial indicates that the assistant prosecuting attorney; counsel for CCDCFS; Alvis; a CCDCFS supervisor; the

children's GAL (telephonically); Mother's counsel; Mother's GAL; S.F.'s father's counsel; D.S.'s father's advisory counsel; and D.S.'s father's GAL were all present for the hearing, along with the court staff and court reporter. Additionally, the trial was initially set for September 29, 2022, and convened on this date, but the trial court ultimately continued the matter so that Mother could properly subpoena witnesses and because of service issues relating to one of the fathers.

{¶ 21} Based on the totality of the circumstances present in this case, we find no error in the trial court's decision to proceed without Mother's presence and overrule her continuance. We therefore overrule Mother's first and second assignments of error.

{¶ 22} In her third assignment of error, Mother argues that the trial court erred in allowing Alvis to testify to statements made by the children's grandmother. Particularly, Mother points to three instances of supposed hearsay, as follows. First, Alvis described grandmother's report that some of the telephone conversations that the children had with Mother "would leave the children overwhelmed" and that grandmother felt "as though the communication with [Mother] was starting to affect the behavior of the children once they were finished communicating with [Mother]." (Tr. 23-24.) Second, Alvis testified that grandmother reported that Mother was not taking her medication. (Tr. 17.) Third, Alvis testified that grandmother wishes to adopt the children. (Tr. 28.)

{¶ 23} Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter

asserted." Evid.R. 801(C). Unless hearsay statements fall under a recognized exception, they are inadmissible. Evid.R. 802. Pursuant to Juv.R. 34(I), the Rules of Evidence apply to hearings on motions for permanent custody. Juvenile court judges are presumed to be able to disregard improper testimony. *In re J.T.*, 8th Dist. Cuyahoga Nos. 93240 and 93241, 2009-Ohio-6224, ¶ 70. Therefore, the admission of hearsay evidence in parental rights cases, even if error, is not considered prejudicial unless it is shown that the court relied on improper evidence in making its decision. *Id.*, citing *In re Lucas*, 29 Ohio App.3d 165, 172, 504 N.E.2d 472 (3d Dist.1985).

{¶ 24} Mother argues that "the juvenile court relied upon the grandmother's inadmissible hearsay statements presented by Ms. Alvis when terminating Mother's parental rights." She cites the trial court's judgment entry finding that Mother inconsistently engaged in mental health treatment and inappropriate interactions with her children. A review of the record, however, demonstrates that these are both supported by the record independent of the claimed hearsay statements.

{¶ 25} Mother's inconsistent mental health treatment is supported by the record above and beyond the alleged hearsay statements. Mother's compliance with medication is just one aspect of Mother's inconsistent mental health treatment. Alvis testified that Mother was referred to two mental health providers. Mother was first referred to Ohio Guidestone, where she engaged in services sporadically and was then unsuccessfully discharged due to noncompliance. The records from the

Charak Center for Health and Wellness, Mother's provider at the time of trial, noted that Mother's attendance and participation were not consistent.

{¶ 26} Mother's inappropriate interactions with her children are also supported by the record. Alvis testified in detail about the incident during a visitation where Mother became physical with D.S. in the presence of a parenting coach. After the incident, Mother's in-person visitation was stopped and Mother communicated with the children via telephone and video, though it appears that the children were soured by the incident since Mother had not spoken to or seen the children since August 2022, and both children expressed to the GAL that they would prefer to remain with their grandmother. Additionally, the children's GAL expressed concern about Mother's handling of the children. Particularly, the GAL noted,

> [T]hat was one of the problems that presented during the supervised visitation with the visitation coach about eight months ago where I guess [Mother] was showing no attention at all to D.S., but had concentrated her focus on S.F., which the visitation coach intervened and tried to redirect her, but [Mother] was not going to have any of it, and, consequently, the visiting coach terminated the visit.
>
> * * *
>
> [T]he parenting coach and the report in that staffing indicated [Mother] has been observed by her parenting coach with bizarre behaviors, especially towards [D.S.]. She [has] not engaged in any interactions with him during the visits. Mother locked herself and [S.F.] in a bedroom to avoid — from the parenting coach.

(Tr. 47-48.)

{¶ 27} We also note that Mother's noncompliance with mental health treatment and inappropriate interactions with the children are supported by the fact

that Mother was incarcerated right before trial in relation to a domestic violence incident with another child of hers, an adult daughter. This very fact is indicative of a failure to benefit from mental health treatment and act appropriately with children, even if the victim was an adult child.

{¶ 28} Finally, Mother's assertion that grandmother's wishes to adopt the children constitutes inadmissible hearsay does not appear to have affected the trial court's determination because the trial court did not cite this factual finding in its judgment entry. Nonetheless, this fact is supported independently by the affidavit that supported the agency's motion asking for permanent custody of the children. Additionally, the fact may be inferred from the children's communication to the GAL that they wish to remain with their grandmother.

{¶ 29} We have carefully reviewed the record and factual findings of the court and find that each instance of asserted hearsay is independently supported by the record. We therefore find that the trial court did not rely on improper hearsay evidence in making its decision to terminate Mother's parental rights to the children, and that the trial court's decision was based on sufficient evidence.

### III. Conclusion

{¶ 30} The trial court did not err in proceeding to trial and overruling Mother's continuance based on her absence from the trial, which the evidence demonstrated was of her own volition. We further find that the trial court did not err in admitting hearsay statements because each alleged hearsay statement was

independently supported by evidence in the record or not relied upon by the trial court in making its determination.

{¶ 31} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court, juvenile division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
FRANK DANIEL CELEBREZZE, III, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
MARY J. BOYLE, J., CONCUR