[Cite as *In re D.M.*, 2018-Ohio-4737.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | | |
|---|---|---|---|
| IN THE MATTER OF: | D.M. | : | JUDGES: |
| | P.B. | : | Hon. W. Scott Gwin, P.J. |
| | C.B. | : | Hon. Craig R. Baldwin, J. |
| | | : | Hon. Earle E. Wise, Jr., J. |
| | | : | |
| | | : | |
| | | : | Case Nos. 18 CA 18 |
| | | : | 18 CA 19 |
| | | : | 18 CA 20 |
| | | : | |
| | | : | O P I N I O N |

.

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Appeal from the Court of Common Pleas, Juvenile Division, Case Nos. 16JC00412, 16JC00502, 16JC00412 |
| JUDGMENT: | November 26, 2018 |
| DATE OF JUDGMENT: | Affirmed |

APPEARANCES:

For Plaintiff-Appellant

MARK PERLAKY
232 W. 3rd Street 323
Dover, OH 44622

For Appellant Ronald Blackstone

JEANETTE MOLL
P. O. Box 461
ZANESVILLE, OH 43701

For Defendant-Appellee

MELISSA M. WILSON
Guernsey County Children Services
274 Highland Avenue
Cambridge, OH 43725

*Wise, Earle, J.*

{¶ 1}   Appellant is the father of P.B, born November 28, 2015, and C.B, born October 23, 2016. D.M's father is unknown. L.M is the mother of D.M, P.B and C.B. Appellant and L.M are not married, but lived together on and off during the pendency of this matter.

{¶ 2}   On August 30, 2016, a complaint filed by GCCS alleged D.M and P.B were neglected, abused and dependent. Concerns included appellant's alcohol abuse and unexplained injuries to D.M alleged to have been inflicted by appellant. Ex parte custody was granted to GCCS on the same date.

{¶ 3}   At an adjudicatory hearing held on November 7, 2016, appellant and L.M stipulated to the children being dependent pursuant to R.C. 2151.04(B) and (C), and the trial court found them dependent. The children remained in the temporary custody of GCCS. C.B was born shortly before the adjudicatory hearing and immediately placed in GCCS temporary custody. C.B's case was consolidated with that of D.M and P.B. All three children were placed in a foster home in December 2016 where they remained for the duration of this matter.

{¶ 4}   A dispositional hearing was held on November 21, 2016. The previous order of temporary custody was continued and the parents were ordered to comply with the GCCS case plan adopted by the court. Appellant was to complete a mental health assessment and follow all recommendations, complete anger management, comply with Help Me Grow and Early Head Start for D.M and P.B, refrain from using physical discipline with either child and learn effective alternatives, obtain and maintain sobriety, and ensure

he had the ability to provide for the basic needs of the children - food, clothing, shelter, medical, and educational.

{¶ 5}   Appellant struggles with addiction issues. Through the pendency of this matter, appellant engaged in both inpatient and outpatient treatment.

{¶ 6}   Following appellant's first inpatient stay, he and L.M fared well in their progress on their case plan for approximately six months. This led to progressive visits with the children in January 2017. However, due to housing concerns involving bed bugs, visits were moved back to the agency until appellant and L.M could secure new housing. They secured that housing in May 2017. Progressive visits began again, but quickly deteriorated. Because of L.M's intellectual limitations, parenting falls mostly to appellant. Appellant was overwhelmed by the stress of having all three children in the house and stated to workers that he did not know how he could manage to work, cook, clean, and take care of the children.

{¶ 7}   Appellant's relationship with D.M never improved. D.M was observed to be frightened of appellant and appellant mentioned to one of his service providers that D.M is the reason he dislikes children. In June, 2017, both appellant and L.M relapsed and began drinking again. In October, appellant tested positive for methamphetamine and THC.

{¶ 8}   Appellant therefore went through inpatient treatment for a second time and successfully completed the same. From there he moved into sober housing and engaged in intensive outpatient therapy. He left the sober living facility on March 29, 2018. As of the date of the date of the permanent custody hearing, appellant was regularly attending AA meetings and was engaged in counseling services at Cedar Ridge Behavioral Health

Solutions. He had, however, revoked his release of information to GCCS. Therefore the only information the agency received was his attendance and drug screen results.

{¶ 9} Appellant changed jobs frequently, and had six different jobs between January 2018 and September, 2018. Appellant's on again, off again relationship with L.M is tumultuous and riddled with violence. Appellant threatened self-harm on two occasions, and each destroyed the property of the other during a period when they were separated. Before appellant entered inpatient treatment for the second time, L.M obtained a protection order against appellant which stemmed from an aggravated menacing incident in September of 2017. Appellant violated the protection order on two occasions - October 18 and October 30, 2017. He was convicted of the first violation, the second was dismissed.

{¶ 10} On September 8, 2017, GCCS filed a motion for permanent custody of the children. At an annual review hearing held September 18, 2017, the trial court granted a 6-month extension of temporary custody. On January 10, 2018, however, GCCS filed a motion to dismiss the motion for permanent custody so that kinship placement options raised by L.M could be explored. When none of the proposed kinship options were found to be appropriate, GCCS again filed a motion for permanent custody on February 26, 2018.

{¶ 11} The permanent custody hearing was held on June 12, 2018. As of the day of the hearing, D.M and P.B had been in the temporary custody of GCCS continuously since August 29, 2016. C.B had been in the continuous custody of GCCS since October 25, 2016.

{¶ 12} During the hearing GCCS called five witnesses - two case workers, the CASA/GAL, a parent educator from Tri County Early Head Start, a clinical chemical dependency and mental health counselor from Cedar Ridge Behavioral Health Solutions who worked with appellant, and one of the children's foster parents. Appellant testified on his own behalf. The CASA/GAL submitted a written report to the court before the hearing.

{¶ 13} On June 18, 2018, the trial court issued findings of fact and conclusions of law finding GCCS had made reasonable efforts to prevent removal of the children and make it possible for them to return home to either appellant or mother. However, due to the parent's inability to make significant progress in their case plans or to make parental commitment to the children, the court found it in the best interest of the children to terminate the parental rights of appellant, L.M, and the unknown father of D.M, and place the children in the permanent custody of GCCS. Appellant subsequently filed an appeal and the matter is now before this court for consideration. He raises two assignments of error as follow:

I

{¶ 14} "THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE"

II

{¶ 15} THERE WAS NOT CLEAR AND CONVICNING EVIDENCE FOR THE TRIAL COURT TO FIND THAT THE MINOR CHILDREN SHOULD NOT BE PLACED WITH APPELLANT AND THAT IT WAS IN THE MINOR CHILDREN'S BEST INTEREST

TO BE PLACED IN THE PERMANENT CUSTODY OF THE GUERNSEY COUNTY CHILODREN'S SERVICES.

{¶ 16} We address appellant's assignments of error together. Appellant argues the trial court's finding that the best interests of the children would be served by an award of permanent custody to GCCS was against the manifest weight and sufficiency of the evidence. Appellant further argues there was an absence of clear and convincing evidence to support a conclusion that it was within the best interests of the children to award permanent custody to GCCS. We disagree.

{¶ 17} As an initial matter, we note that appellant is neither the biological nor legal father of D.M, yet he challenges the award of permanent custody of D.M to GCCS. As appellee points out, appellant has no standing to challenge the trial court's grant of custody of D.M to GCCS. We therefore address appellant's arguments only as they pertain to P.B and C.B.

{¶ 18} As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent and credible evidence upon which the fact finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978). On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and

determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). See also, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541, 1997-Ohio-52; *Eastley v. Volkman*, 132 Ohio St.3d 328, 972 N.E.2d 517, 2012-Ohio-2179. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶ 21

### Permanent Custody

{¶ 19} R.C. 2151.414(B)(1) states permanent custody may be granted to a public or private agency if the trial court determines by clear and convincing evidence at a hearing held pursuant to division (A) of R.C. 2151.414, that it is in the best interest of the child and any of the following apply:

> (a) The child is not abandoned or orphaned* * *and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
>
> (b) The child is abandoned.
>
> (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
>
> (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period* * *

(e) The child or another child in the custody of the parent or parents from whose custody the child has been removed has been adjudicated an abused, neglected, or dependent child on three separate occasions by any court in this state or another state.

{¶ 20} Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus. See also, *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 481 N.E.2d 361 (1985). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Cross* at 477.

{¶ 21} Under R.C. 2151.414(B)(1)(d), which is applicable in the instant matter, when a child has been in the temporary custody of a children services agency for 12 or more months of a consecutive 22–month period a trial court need not engage in the R.C. 2151.414(B)(1)(a) analysis of whether the child can or should be placed with either parent within a reasonable time and may proceed directly to a best interests analysis. *In re Williams*, Franklin App. No. 02AP-924, 2002-Ohio-7205, at ¶ 46.

## Best Interests

{¶ 22} R.C. 2151.414(D)(1) sets forth the factors a trial court shall consider in determining the best interest of a child:

(D)(1) In determining the best interest of a child at a hearing held pursuant to division (A) of this section or for the purposes of division (A)(4) or (5) of section 2151.353 or division (C) of section 2151.415 of the Revised Code, the court shall consider all relevant factors, including, but not limited to, the following:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

Appellant's Arguments

{¶ 23} Appellant does not dispute that the children had been in the custody of GCCS for the requisite period of time pursuant to R.C. 2151.414(B)(1)(d) to terminate appellant's parental rights. Appellant therefore focuses his argument on evidentiary issues, and the existence or non-existence of factors enumerated in R.C. 2151.414(E).

{¶ 24} Specifically appellant argues the trial court should not have allowed a GCCS case worker to testify as to facts that occurred prior to her direct involvement in the case because she had no personal knowledge of those facts. Appellant argues that the case worker's testimony as to facts pre-dating her involvement in the matter should have been excluded as impermissible hearsay. Appellant points specifically to the case worker's testimony regarding how many reports the agency had received against the family, reports of alleged abuse of D.M by appellant, and reports of criminal behavior by both appellant and L.M. Appellant additionally argues the trial court erred when it impermissibly considered a prior adjudication mentioned by the case worker. Appellant failed to object to admission of any of this testimony, but contends that its admission amounted to plain error. We disagree.

Hearsay

{¶ 25} First, notice of plain error applies only under exceptional circumstances to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978) paragraph three of the syllabus. Plain error does not exist unless it can be said that but for the error, the outcome of the trial would have clearly been otherwise. *State v. Moreland*, 50 Ohio St.3d 58, 62, 552 N.E.2d 58 (1990).

{¶ 26} In *In re Z.T*, 8th Dist. Cuyahoga No. 2007-Ohio-827 ¶ 21, the Eighth District found that a social worker may competently testify to the contents of the agency's case file:

> Evid.R. 803(6) creates a hearsay exception for records kept in the
> ordinary course of business. See *In re McCullough* (Dec. 6, 2001),
> Cuyahoga App. No. 79212. Likewise, Evid.R. 803(8) creates a
> hearsay exception for public records and reports which set forth the
> activities of an agency or office and contain matters observed which,
> pursuant to a duty of law, the agency or office has a duty to report.
> See *In re Brown*, Athens App. No. 06CA4, 2006-Ohio-2863, at ¶ 32,
> fn.1; *In re Garvin* (June 15, 2000), Cuyahoga App. Nos. 75329 and
> 75410.

{¶ 27} Under either exception, the case worker's testimony concerning records kept by the agency, statements by appellant and L.M, and reports taken during the course of the agency's investigation, were admissible because the contents of her file, including

the total number of reports against the family, had been compiled as part of the GCCS's activities. We therefore find no plain error and reject appellant's hearsay argument.

Prior Adjudication

{¶ 28} Appellant also argues the trial court improperly took judicial notice of a prior adjudication. Specifically, appellant points to one paragraph in the trial court's findings of fact and conclusions of law which indicates "[p]rogressive visitation was attempted in March of 2016, April of 2016 and the children were returned to their parents in May of 2016 under a previous case."

{¶ 29} An examination of the record, however, indicates that the trial court did not take judicial notice of the prior case. Rather, the GCCS ongoing case worker testified regarding the agency's prior involvement with this family, which ended one week before the current matter began. Further, the CASA/GAL testified at trial and included the entire history of this family's involvement with GCCS in her final report. The trial court was permitted to take the testimony of these witnesses and the CASA/GAL report into consideration when reaching its conclusions. *Matter of Spears*, 4th Dist. Athens No. 96CA1768, 1997WL117229, *6. We therefore find no plain error in the trial court's consideration of this information.

R.C. 2151.414(E)

{¶ 30} Appellant next argues the trial court's determination that the children either cannot be placed with either parent within a reasonable time period or should not be placed with either parent is against the manifest weight and sufficiency of the evidence. We disagree.

{¶ 31} Appellant argues the trial court did not properly consider R.C. 2151.414(E)(1), (2), (3), (4), and (9). But because the trial court found R.C. 2151.414(B)(1)(d) applicable, pursuant to R.C. 2151.414(D)(1)(d) the trial court need only have considered R.C. 2151.414(E)(7)-(11) in assessing the best interests of the children.

{¶ 32} We therefore address appellant's complaint only as to R.C. 2151.414(E)(9). That section states:

> The parent has placed the child at substantial risk of harm two or more times due to alcohol or drug abuse and has rejected treatment two or more times or refused to participate in further treatment two or more times after a case plan issued pursuant to section 2151.412 of the Revised Code requiring treatment of the parent was journalized as part of a dispositional order issued with respect to the child or an order was issued by any other court requiring treatment of the parent.

{¶ 33} Appellant argues his recent success maintaining his sobriety should have carried more weight in the trial court's decision. According to the record, however, while appellant has not rejected treatment, he has been in and out of treatment since February 2016. Although at the time of trial appellant had been sober for seven months, only two of those months had been spent living outside of a sober living community. Further, appellant's history as contained in the record indicates that he tends to relapse during

times of stress, including when all three children are in the home. Transcript of trial (T.), 22-26, 53.

{¶ 34} As for best interests of the children, the trial court noted that mother, due to her own challenges, needs appellant to assist in parenting, yet when the family is intact, the stress of the situation results in a breakdown of the family unit. When progressive visits were attempted, there were instances of domestic violence, two threats of self-harm by appellant, substance abuse and criminal behavior by both appellant and L.M. Appellant was placed on 36 months' probation in December 2017 after violating a protection order obtained against him by L.M. Further, appellant has been unable to maintain consistent employment. In short, while appellant attempted to work his case plan, he has been unable to arrive at a place where reunification is possible. T. 35-41.

{¶ 35} The record also reflects the children are "high-needs" and require far more than casual parenting. Their needs are being met in their foster home. They show some excitement at the prospect of visiting their parents, yet have been in foster care so long that they have become well integrated into the foster family. T. 118-128.

{¶ 36} In summary, the GCCS caseworker's testimony regarding events that took place before her involvement in this matter were not hearsay. The record reveals that the trial court considered each applicable statutory factor, relied on the evidence in the entire record, including the GAL's report, and ultimately concluded that a grant of permanent custody to GCCS is in the best interest of the children. We find clear and convincing evidence in the record to support this decision. Appellant's assignments of error are overruled.

{¶ 37} The judgment of the Guernsey County Court of Common Pleas Juvenile Division is affirmed.

By Wise, Earle, J.

Gwin, P.J. and

Baldwin, J. concur.

EEW/rw