DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from an Athens County Common Pleas Court, Juvenile Division, judgment that awarded Athens County Children Services (ACCS) permanent custody of Corey Brown, born April 11, 1995, Courtney Brown, born September 7, 1996, Kyle Brown, born February 24, 1999, and Ethan Brown, born January 5, 2001.
 {¶ 2} Appellant Melissa Brown, the children's natural mother, raises the following assignments of error for review and determination:
FIRST ASSIGNMENT OF ERROR:
"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR IN VIOLATION OF MOTHER'S RIGHT TO DUE PROCESS BY ALLOWING THE INTRODUCTION OF TESTIMONY OBTAINED FROM PREVILEGED [SIC] COMMUNICATION BETWEEN MOTHER AND HER COUNSELOR."
SECOND ASSIGNMENT OF ERROR:
"THE TRIAL COURT COMMITTED PREDJUDICIAL [SIC] ERROR WHEN IT DENIED MOTHER'S MOTION FOR CONTINUANCE."
THIRD ASSIGNMENT OF ERROR:
"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR AND VIOLATED MOTHER'S RIGHT TO DUE PROCESS OF LAW BY ADMITTING THE CASE NOTES OF NIKKI PEYTON."
FOURTH ASSIGNMENT OF ERROR:
"THE TRIAL COURT COMMITTED PREJUDICIAL ERROR WHEN IT BASED ITS DECISION TO TERMINATE MOTHER'S PARENTAL RIGHTS BASED ON EVIDENCE NOT IN EXISTENCE AT THE TIME THE MOTION TO MODIFY DISPOSITION TO PERMANENT CUSTODY WAS FILED."
 {¶ 3} On January 22, 2003, ACCS filed a complaint and alleged the children to be neglected and dependent. On March 4, 2003, the trial court adjudicated the children dependent and awarded ACCS temporary custody.
 {¶ 4} ACCS unsuccessfully attempted to reunite the children with appellant and their father. The children's parents have a history of domestic violence that they do not hide from the children. The children are afraid of their father and the trial court issued an order to prohibit the father from having contact with the children or with appellant. Each time the children returned home, ACCS eventually had to again seek their custody. Thus, since January of 2003, the children have been in ACCS's temporary custody three times. On June 30, 2005, ACCS filed a motion for permanent custody.
 {¶ 5} On August 26, 2005, the guardian ad litem filed her report and related that ACCS removed the children after attempted reunification due to domestic violence, physical abuse, emotional abuse, alcohol abuse, and failure to comply with the case plan. She opined that the Brown home is unsafe for the children due to alcohol abuse, domestic violence, physical abuse and verbal abuse. The children have witnessed their father assault their mother and stated that the mother "was as mean as dad when she was drinking." She stated that "[t]he children have intense behavioral and anger problems as a result of being exposed to repeated acts of violence; some of the behaviors have abated since they have been in foster care, but all foster parents report the children still have anger issues."
 {¶ 6} On August 22, 2005, appellant requested to continue the permanent custody hearing. She asserted that because the court did not appoint her counsel until July 18, 2005, counsel needed additional time. At a hearing regarding the motion, counsel contended that he had insufficient time to familiarize himself with the case and to provide effective representation.
 {¶ 7} ACCS opposed appellant's motion noting that one of its witnesses, who resides in Kentucky and attends law school, would suffer a hardship if the court continued the case. It also stated that other witnesses had cleared their calendars to appear at the hearing.
 {¶ 8} The trial court noted that the case has been pending since January of 2003 and found that appellant must bear "a significant portion of the responsibility for not contacting her newly appointed counsel any earlier." The court found that appellant had the burden to maintain contact with her attorney. The court decided to grant appellant's counsel leeway as the hearing proceeded, but denied her request for a continuance. The court noted that if the need arose for a recess, it would grant one.
 {¶ 9} At the permanent custody hearing, ACCS questioned appellant regarding her counseling. Appellant objected and argued that communications between her and her counselor are privileged. The trial court did not permit ACCS to delve into certain areas, such as childhood events, but stated that the relevant questions are whether she attended counseling and if she progressed.
 {¶ 10} ACCS asked appellant whether she abused cocaine. She stated, "I've used it a couple of times but I never abused it." The following colloquy then occurred:
Q. There was a time when you used cocaine almost daily for a three or four month period isn't there?
A. No, not everyday. It was years ago.
Q. That was in the year 2003 wasn't it.?
A. Years ago.
Q. Pardon me?
A. Yes. Years ago.
Q. The year 2003?
A. Yes.
Q. And you say you didn't use it daily but you used it quite frequently almost daily for a hree or four month period in 2003 didn't you?
A. Some. I don't recall it's been too long."
 {¶ 11} Appellant's former neighbor testified that he witnessed one of appellant's children, clothed in a diaper, walking around the apartment complex and almost reach the state highway. He also claimed that one of her children used scissors to let air out of his vehicle's tire. He stated that he would see her sitting and drinking alcohol while the children ran around. He did not think she supervised them properly.
 {¶ 12} On December 29, 2005, the trial court awarded ACCS permanent custody. The court did not allow ACCS to introduce appellant's records from her counseling sessions "because [they] contain confidential communications that exceed the intended scope of the written releases." The court determined that permanent custody serves the children's best interests. The court also considered the children's interactions and interrelationships:
"All of these children have suffered as a result of a home life with their parents that regularly included domestic violence, abuse, and substance abuse. With good reason, they all fear their father. Melissa, the mother, also fears David, the father, again, with good reason. Mother and father have a history of separating and divorce proceedings. Mrs. Brown's heart may be in the right place, but she has been wholly unsuccessful in regaining appropriate parental control of these children. The children have modeled and demonstrated their father's anger and violent behaviors. All relationships are strained.
By contrast, when outside the home the boys have a reasonable relationship with each other. However, the boys are mean to their sister beyond any acceptable level. The children have established appropriate relationships with their respective foster families and are benefitting from the counseling which they now receive regularly. It may be necessary to place the children separately for adoption.
While it is not necessary for the court to state reasons why these children cannot and should not be reunited with a parent in the future, it is important to point out the lack of genuine commitment demonstrated by the parents. At the very time that this case was approaching hearing on the critical motion to modify disposition to permanent custody, mother `met' a man through the internet and moved to Hamilton, Ohio, some three hours from Athens County. In an effort to justify this decision she explained that the move was based upon better employment opportunities. At the time of the last hearing in this matter, mother had held three different jobs in Hamilton, including motel housekeeper and convenience store clerk, the highest paying of which paid eight dollars an hour. Additionally, this move made impossible any regular consistent visitation and was obviously inconsistent with any realistic plan for reunification.
Father moved in with a family (husband, wife, son and daughter) and is the new `boyfriend' of the family's daughter, age nineteen."
 {¶ 13} The court next considered the children's wishes:
"Because of their mental issues and immaturity, little weight should be place[d] on the wishes of the children. Their statements in this regard have varied. They love their mother and fear their father. They are very confused and often evidence anger."
 {¶ 14} Regarding the children's custodial history, the court stated:
"All the children have lived in agency care for twelve or more months of a consecutive twenty-two month period. Multiple strategic efforts to reunite the family have failed. Prior to this court's involvement (which commenced in January 2003), the parties were already in divorce court. Prior to that, the children lived primarily with their mother and father.
Mother admits to using cocaine `almost daily' for a two to three month period in 2003 even though ACCS * * * had just receive temporary custody of her children and she was subject to the requirements of a case plan.
Using March 4, 2003, (the date of adjudication of dependency) as a start date and January 3, 2005, as the end date, the children have been in agency custody and care as follows:
All four children were in agency foster care the months of March, April, May, June, November and December of 2003 and January, March, April, May and June of 2004, at which time Courtney returned to mother's home. Cory remained in care during July and August of 2004; Kyle during July, August, and most of September 2004; and Ethan during July, August, September, and most of October 2004. After all four had been reunited with their mother it again became necessary to remove them in May of 2005. They have been in foster care since then."
 {¶ 15} The court then considered the children's need for a legally secure permanent placement and whether it could be achieved without a grant of permanent custody:
"Permanent custody is the only reasonable option that will give these troubled children an opportunity for a legally secure placement, which they need and deserve. While mother has fought valiantly to extract herself from an abusive and dependent relationship with her husband, she has been unable to establish or maintain a home suitable to raise these children. Furthermore, the children have their own mental health and behavioral issues that make their care and development very challenging. Neither parent has ever adequately addressed these issues."
 {¶ 16} The court additionally found that the children have been in ACCS's temporary custody for twelve or more months of a consecutive twenty-two month period and that ACCS used reasonable efforts. This appeal followed.
 I {¶ 17} In her first assignment of error, appellant asserts that the trial court erred by permitting her to testify regarding privileged communications between her and her counselor. She asserts that the court relied upon confidential information, including her testimony regarding cocaine use, when it decided to award ACCS permanent custody. ACCS asserts that R.C.2317.02(G)(1)(g) provides an exception in the instant case.
 {¶ 18} R.C. 2317.02(G)(1)(g) provides that the following persons shall not testify:
(G)(1) * * * a professional clinical counselor, professional counselor, social worker, independent social worker, marriage and family therapist or independent marriage and family therapist, or registered under Chapter 4757. of the Revised Code as a social work assistant concerning a confidential communication received from a client in that relation or the person's advice to a clientunless any of the following applies: * * *
(g) The testimony is sought in a civil action and concerns court-ordered treatment or services received by a patient as part of a case plan journalized under section 2151.412 of the Revised Code or the court-ordered treatment or services are necessary or relevant to dependency, neglect, or abuse or temporary or permanent custody proceedings under Chapter 2151. of the Revised Code.
 {¶ 19} The Ohio General Assembly enacted R.C.2317.02(G)(1)(g) after the Ohio Supreme Court's holding in In reWieland (2000), 89 Ohio St.3d 535, 733 N.E.2d 1127, that in the "absence of a specific statutory waiver or exception, the testimonial privileges established under R.C. 2317.02(B)(1) (concerning communications between a physician and patient), R.C.4732.19 (concerning communications between a licensed psychologist and client), and R.C. 2317.02(G) (concerning communications between a licensed counselor or licensed social worker and client) are applicable to communications made by a parent in the course of treatment ordered as part of a reunification plan in an action for dependency and neglect."
 {¶ 20} In the case at bar, ACCS referred appellant to counseling and the referral was journalized in a case plan. Therefore, appellant's statements regarding cocaine use and other communications between her and her counselor are not privileged pursuant to R.C. 2317.02(G)(1)(g). See, e.g., In re Songer
(Oct. 3, 2001), Lorain App. No. 01CA7841.
 {¶ 21} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's first assignment of error.
 II {¶ 22} In her second assignment of error, appellant asserts that the trial court erred by denying her motion for a continuance.
 {¶ 23} Juv.R. 23 provides that "[c]ontinuances shall be granted only when imperative to secure fair treatment for the parties." Generally, "the grant or denial of a continuance is a matter which is entrusted to the broad, sound discretion of the trial judge. An appellate court must not reverse the denial of a continuance unless there has been an abuse of discretion." Statev. Unger (1981), 67 Ohio St.2d 65, 67, 423 N.E.2d 1078. We note that an abuse of discretion is more than an error of law or judgment; rather, it implies that the court's attitude was unreasonable, arbitrary or unconscionable. See, e.g., Blakemorev. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. "A decision is unreasonable if there is no sound reasoning process that would support that decision." AAAA Enterprises, Inc. v.River Place Community Urban Redevelopment Corp. (1990),50 Ohio St.3d 157, 161, 553 N.E.2d 597.
 {¶ 24} In the case at bar, we believe that the trial court struck an appropriate balance between appellant's right to a fair hearing and its interest in timely disposing of the case. The court noted that the case had been pending for two and one-half years and that appellant bore some fault for her attorney not being as prepared as he would have liked. The court also stated that it would grant appellant's counsel leeway and continue the case as necessary. Furthermore, appellant has not stated precisely how the court's decision to deny her request had prejudiced her.
 {¶ 25} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's second assignment of error.
 III {¶ 26} In her third assignment of error, appellant contends that the trial court erred by admitting former ACCS caseworker Nikki Peyton's case note recordings. She asserts that the notes are inadmissible because they contain hearsay within hearsay.
 {¶ 27} ACCS asserts that the trial court properly admitted Peyton's notes under the business records exception to the hearsay rule. ACCS further contends that no evidence exists that the court relied upon Peyton's notes to reach its decision, and that the record contains sufficient other evidence to support the court's judgment.
 {¶ 28} Generally, the admission of relevant evidence rests within the sound discretion of the trial court. Thus, appellate courts should not disturb a trial court decision to admit or to exclude evidence absent an abuse of discretion. See, e.g., Statev. Sage (1987), 31 Ohio St.3d 173, 510 N.E.2d 343, paragraph two of the syllabus; State v. Reed (1996), 110 Ohio App.3d 749,752, 675 N.E.2d 77. Once again, we note that an abuse of discretion is more than an error of judgment; it implies that the trial court acted unreasonably unconscionably, or arbitrarily. See, e.g., State v. Lessin (1993), 67 Ohio St.3d 487,620 N.E.2d 72; Rock v. Cabral (1993), 67 Ohio St.3d 108,616 N.E.2d 218. When courts apply the abuse of discretion standard, they may not merely substitute their judgment for that of the trial court.In re Jane Doe I (1991), 57 Ohio St.3d 135, 566 N.E.2d 1181, citing Berk v. Matthews (1990), 53 Ohio St.3d 161,559 N.E.2d 1301.
 {¶ 29} "`Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). Hearsay is generally inadmissible. Evid.R. 802. "`[H]earsay is not admissible in adversarial juvenile court proceedings at which a parent, charged with neglecting his or her children, may lose the right to custody of his or her children. * * * * [Because] the judge acts as the factfinder and is presumed to be able to disregard hearsay statements, the person against whom the hearsay statements were admitted in such a case must show that the statements were prejudicial or were relied upon by the judge in making his decision.'" In reLucas (1985), 29 Ohio App.3d 165, 172, 504 N.E.2d 472, quoting In re Vickers Children,14 Ohio App.3d at 206, 470 N.E.2d 438, and citing In re Sims (1983),13 Ohio App.3d 37, 468 N.E.2d 111.
 {¶ 30} Evid.R. 803(8) sets forth a public records exception to the hearsay rule:
(8) Public records and reports. Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (a) the activities of the office or agency, or (b) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, unless offered by defendant, unless the sources of information or other circumstances indicate lack of trustworthiness.
 {¶ 31} In Westinghouse Electric Corp. v. Dolly MadisonCorp. (1975), 42 Ohio St.2d 122, 130, 326 N.E.2d 651, the court held that the evidence rules allow "the admission of official records, although these records may constitute hearsay, in so far as they consist of facts recorded by public officials who are not present as witnesses. However, the [rule] does not render admissible statements contained in official reports, where such statements are themselves hearsay. * * *." See, also, Evid.R. 805 (stating that hearsay within hearsay is not excluded if each layer is admissible in and of itself).
 {¶ 32} In the case at bar, we believe that the trial court properly admitted the caseworker's notes under Evid.R. 803(8).[1] The notes reflected the caseworkers' observations that she recorded as part of her duty to investigate a neglect, abuse, or dependency complaint. See Lucas (holding that "a compilation of data and reports of the Putnam County Welfare Department of matters observed and recorded pursuant to its duty to administer the laws pertaining to dependent or alleged dependent children" was admissible under the public records exception). To the extent that her notes may have contained hearsay, we note that appellant did not identify which portions of the case notes that, she contends, contain hearsay (the case notes consist of seventy pages). See, generally, Statev. Floyd (Feb. 21, 1992), Scioto App. No. 1992.
 {¶ 33} Moreover, we note that the trial court explicitly recognized the limited admissibility of the caseworker's notes. The court correctly observed that the caseworker's notes "obviously include a lot of things that I probably can't give any weight to because of the nature of the case notes. The caseworkers are trained to write everything they see, hear, think, anything that happened that day * * * * I mean, everything that they do with the case is probably contained in here in one fashion or another as such, you know, that the relevance of some of this may be very questionable and the weight questionable as well, but if this is a complete list of the records and she has certified them and she creates and keeps the records then I think it's an admissible document."
 {¶ 34} Furthermore, appellant did not establish that she suffered prejudice. Nothing in the trial court's decision to award permanent custody suggests that it relied on the caseworker's notes in making its judgment.
 {¶ 35} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's third assignment of error.
 IV {¶ 36} In her fourth assignment of error, appellant asserts that the trial court erred by basing its decision on evidence that arose after ACCS filed the permanent custody request.
 {¶ 37} "The dispositional phase of a dependency action involves a much broader inquiry into the child's environment than the adjudicatory phase. 2 Anderson, Ohio Family Law (1989) 305, Section 20.1. That is because the best interest of the child is to be considered. In re Foust (1989), 57 Ohio App.3d 149, 153,567 N.E.2d 1042, 1046. Thus, any evidence that is material and relevant to the `best interest' issue should be admitted and considered during dispositional proceedings. See Juv.R. 34(B)(2); see, also, In re Baby Girl Baxter (1985), 17 Ohio St.3d 229,233, 17 OBR 469, 471, 479 N.E.2d 257, 260." In re Pryor (1993),86 Ohio App.3d 327, 341, fn. 9, 620 N.E.2d 973.
 {¶ 38} In the instant case, nothing prohibited the trial court from considering and relying upon evidence that occurred after ACCS filed the permanent custody request. The court could properly consider appellant's conduct, as well as other relevant evidence, when it considered the children's best interests.
 {¶ 39} Accordingly, based upon the foregoing reasons, we hereby overrule appellant's fourth assignment of error and hereby affirm the trial court's judgment.
Judgment affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court, Juvenile Division, to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Abele, J., Kline, J. McFarland, J.: Concur in Judgment 
Opinion
[1] Although the appellee asserts that the court properly admitted the notes as business records under Evid.R. 803(6), we believe the proper rule is Evid.R. 803(8). Evid.R. 803(6), the "business records" exception, provides:
A memorandum, report, record, or data compilation, in any form, of acts, events, or conditions, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or as provided by Rule 901(B)(10), unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.