[Cite as *In re T.G.*, 2022-Ohio-1213.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| IN THE MATTER OF: | | JUDGES: |
| | | Hon. Earle E. Wise, Jr., P. J. |
| | | Hon. John W. Wise, J. |
| T.G. | | Hon. Patricia A. Delaney, J. |
| | | |
| M.G. | | Case Nos. 2021CA00119, 120, 121 |
| | | |
| M.G. | | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Court of Common Pleas, Juvenile Division, Case Nos. 2019JCV01235, 01236, and 01237

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      April 7, 2022

APPEARANCES:

For Appellee SCJFS

BRANDON J. WALTENBAUGH
STARK COUNTY JFS
402 2nd Street, SE
Canton, Ohio 44702

For Appellant

AARON KOVALCHIK
116 Cleveland Avenue, NW
Suite 808
Canton, Ohio 44702

*Wise, John, J.*

**{¶1}** Appellant, C.R., appeals the decision of the Stark County Court of Common Pleas, Family Court Division, which terminated Appellant's parental rights and granted Stark County Department of Job and Family Services' ("Agency") motion for permanent custody of T.G., M.G.1., and M.G.2 ("Children"). The following facts give rise to this appeal.

## FACTS AND PROCEDURAL HISTORY

**{¶2}** Appellant is the biological mother of T.G., M.G.1., and M.G.2. D.G. is the biological father ("Father").

**{¶3}** On December 11, 2019, the Agency filed complaints alleging the dependency of T.G., the abuse, neglect, and/or dependency of M.G.1., and the abuse, neglect, and/or dependency of M.G.2. The same day, the trial court held an emergency hearing. At the hearing the trial court found that probable cause existed for the involvement of the Agency, that the Agency engaged in reasonable efforts to prevent the need for the removal of the Children, and that continued residence of the Children with Appellant was contrary to their best interests. The trial court approved and adopted the pre-adjudicatory orders requested by the Agency, including a no-contact order between Appellant and the Children, and granted temporary custody of the Children to the Agency.

**{¶4}** On March 5, 2020, the trial court found T.G. and M.G.2. to be dependent and M.G.1. to be an abused child. The trial court placed the Children into temporary custody. The trial court also approved and adopted the case plan, found that the Agency had made reasonable efforts to finalize the permanency planning in effect, and that compelling reasons existed to preclude a filing of permanent custody.

{¶5} On June 5, 2020, the trial court reviewed the case. The trial court approved and adopted the case plan, found that the Agency had made reasonable efforts to finalize the permanency planning, and that compelling reasons existed to preclude filing permanent custody by the Agency.

{¶6} On October 16, 2020, the Agency filed motions to extend its temporary custody of the Children for six months.

{¶7} On November 5, 2020, the trial court approved and adopted the case plan and found that compelling reasons existed to preclude filing permanent custody by the Agency.

{¶8} On January 6, 2021, the trial court held a hearing on the motions to extend the Agency's temporary custody of the Children.

{¶9} On January 8, 2021, the trial court granted the Agency's extension of permanent custody.

{¶10} On March 8, 2021, Attorney Nikki Reed was appointed Guardian ad Litem for the Children.

{¶11} On March 17, 2021, Attorney Herb Morello filed notice of appearance for Appellant.

{¶12} On May 4, 2021, the trial court reviewed the case, and found that no compelling reasons existed to preclude a filing of permanent custody.

{¶13} On July 1, 2021, the Guardian ad Litem filed a report.

{¶14} On July 6, 2021, Appellant filed a motion to continue the permanent custody hearing. On July 8, 2021, despite its prior denial of the motions the trial court continued the trial until September 17, 2021.

**{¶15}** On September 10, 2021, the Guardian ad Litem filed her final report.

**{¶16}** On September 17, 2021, the trial court heard evidence on the motions requesting permanent custody of the Children. The trial court took the matter under advisement.

**{¶17}** At the hearing, Linda Chambliss testified she is a Supervising Worker at the Agency assigned to this case. Appellant objected to Chambliss's testimony as hearsay since she was only a supervisor on the case and lacked first-hand knowledge. The trial court judge overruled the objection.

**{¶18}** Chambliss testified T.G. was born on May 8, 2013. She also testified M.G.1. and M.G.2. were born on December 18, 2018. Chambliss continued, M.G.1. broke her arm. Appellant blamed T.G., but didn't know how it happened.

**{¶19}** Chambliss was asked about Appellant's history with Wayne County's child services when Appellant renewed her objection. The trial court overruled citing this testimony is historical information. Appellant argued employees from Wayne County would be more appropriate to present such testimony. The trial court noted the objection and overruled.

**{¶20}** Chambliss testified that Appellant's open cases in Wayne County related to drug use, being gruff with the Children, and yanking baby T.G. by the arm when she was young. Chambliss continued that Appellant's cases in Stark County stem from ongoing neglect and domestic violence between her and her boyfriend.

**{¶21}** Chambliss testified the Father asked not to participate in any case plan services, did not visit the Children after he was released from prison, and had been removed from the case plan. The Agency had been involved with Appellant because

M.G.1. had a broken arm, and doctors felt Appellant's explanation was not plausible. Appellant blamed T.G., seven years old at the time, for the injury. The Agency also had concerns over Appellant's drug use.

**{¶22}** Chambliss also testified that Appellant had difficulty during visits maintaining and engaging the Children when they were all together. She spoke and acted aggressively toward the Children. Appellant was scheduled to attend counseling with T.G., but they had to stop because Appellant continued to blame T.G. for M.G.1.'s broken arm. This had a negative impact on T.G. The Agency wants Appellant to admit there is a deficit in her parenting in order to learn from the parenting classes. While she has completed Goodwill Parenting classes, she has not demonstrated that she understands and can apply the skills learned. The Agency does not know if Appellant understands that her failure to supervise M.G.1. caused the broken arm.

**{¶23}** Chambliss finished her direct examination by determining, based upon conversations she had with Appellant, that Appellant does not accept responsibility for the M.G.1.'s broken arm.

**{¶24}** On cross-examination, Chambliss testified that she has never personally witnessed Appellant abuse drugs, that Appellant has appropriate housing, and that Appellant has not been charged for M.G.1.'s broken arm.

**{¶25}** On re-direct, Chambliss testified that Appellant indicated that she has a medical marijuana card which allows her to get marijuana from dispensaries in Ohio, but she gets her marijuana from Michigan.

**{¶26}** Next Carmona Griffin, the ongoing worker assigned by the Agency to the case, testified she began working on the case in February of 2021. She testified the

Children's father was not a part of the case or case plan because he has a history of domestic violence and was recently incarcerated in Wayne County for domestic violence.

**{¶27}** Griffin then testified that Appellant's case plan involved her completing a substance abuse assessment, parenting assessment, anger management classes, and a Goodwill Parenting class.

**{¶28}** Appellant completed the substance abuse assessment. The recommendations included her to continue with her counseling, which she has done. Appellant was supposed to drug test randomly, but she has not participated fully in the drugs testing. Appellant tested positive for THC on April 19, 2021, and did not comply with testing after.

**{¶29}** Appellant also completed parenting assessment and anger management classes. However, she did not complete her goals at the Goodwill Parenting course and reunification was not recommended.

**{¶30}** Appellant was also recommended to attend counseling with T.G. However, no progress was being made and Appellant was asked not to come back.

**{¶31}** Griffin then testified that Appellant has made very little progress on her case plan, and that if the Children were to be returned to her, they would be at risk for harm. Griffin does not believe another extension of temporary custody would change anything between Appellant and the Children.

**{¶32}** Appellant testified that M.G.1. and M.G.2. were on track developmentally, and that T.G. has no physical issues, but she is developmentally delayed. She is eight-years old, but her mentality is that of a three or four-year old. T.G., M.G.1., and M.G.2. are placed in the same foster home. They have bonded together as siblings and with the

foster family. It is a possible adoptive placement. No relatives were identified as being able to take placement of the Children. Father has not seen the Children since Griffin has been involved. T.G. appears to be bonded to Appellant, but M.G.1. and M.G.2. do not appear to be bonded to Appellant.

**{¶33}** Griffin testified that permanent placement is in their best interest as they are in a home that is currently safe, they are bonded to the foster family, it is the only home M.G.1. and M.G.2. have known, no case plan progress has been made, and Appellant continues to use marijuana.

**{¶34}** Dr. Aimee Thomas testified she is employed by Lighthouse Family Center as a licensed psychologist. Thomas continued that Appellant thought the Agency treated her unjustly, that she was proven innocent of her abuse charge, and that she believes she still has full custody of the Children. Appellant took no personal responsibility for M.G.1.'s broken arm but blamed T.G. Appellant spent considerable time vilifying T.G. in each session, calling her aggressive and violent. Appellant gave conflicting statements on what happened to M.G.1. In one statement, M.G.1.'s broken arm was an accident. In another statement, T.G. dropped M.G.1. And in a third statement, T.G. stomped on M.G.1. There was no consistency in her statements as to what happened. However, other records showed T.G. likely could not have caused the broken arm.

**{¶35}** Thomas also testified that Appellant's childhood history impacts her ability to parent. She was exposed to domestic violence and experienced sexual abuse at an early age. Appellant's mother was diagnosed with schizophrenia, and Appellant had many poor parental role models. This desensitized Appellant to a chaotic environment.

{¶36} Appellant maintained a long-term relationship with Father. Appellant noted she was a victim of violence in the relationship, but also reported there was mutual violence. T.G. was exposed to these incidents. Father was a reported user of methamphetamines, cocaine, and heroin.

{¶37} Appellant told Thomas she uses marijuana to cope with symptoms of post-traumatic stress disorder. Appellant used marijuana while pregnant with M.G.1. and M.G.2. and was diagnosed with a substance use disorder related to her ongoing use. Appellant has a medical marijuana card and was smoking legally due to her mental health diagnosis. Thomas noted that Appellant was confused and dysregulated when they met. Appellant and Appellant's boyfriend were both smoking marijuana daily. Appellant's PTSD was not being treated by counseling.

{¶38} Thomas testified Appellant was functioning in the below average range of intellectual ability. Appellant acknowledged that she did expose T.G. to violence in Appellant's home and in Appellant's mother's home. Appellant continued to vilify T.G. throughout her interactions with Thomas. Thomas believes Appellant uses marijuana to cope with negative emotions, and it does not appear to be effective. Appellant was also drinking alcohol several days a week. Appellant's IQ was assessed at 73, which means she is functioning at the level of a ten-year-old. Marijuana and alcohol use can further reduce someone's judgment and reasoning.

{¶39} T.G. had reported during a clinical interview that Appellant "whooped" T.G.'s younger siblings, and that T.G. has had bruises from Appellant's "whooping." Thomas believes Appellant parentified T.G. by giving T.G. responsibilities including giving M.G.1. and M.G.2. formula.

**{¶40}** Thomas diagnosed Appellant with Cannabis Use Disorder, Specified Personality Disorder with Borderline Independent Traits, Borderline Intellectual functioning, and other Specified Stress or Trauma Disorder which is a step down from Post-Traumatic Stress Disorder. Thomas recommended Appellant participate in counselling to address anger management, trauma focus to reduce PTSD type symptoms, successfully complete Goodwill Parenting classes, joint counseling sessions with T.G.'s therapist, substance abuse treatment services, abstain from mood altering substances, including alcohol, the Agency should ascertain if Appellant's boyfriend can be unsupervised around the Children, and to stop vilifying T.G. for M.G.1's injury.

**{¶41}** Next, Kelsey Kiggans testified she is a parenting instructor and family coach at Goodwill Industries. Kiggans testified Appellant began the parenting program on September 14, 2020, and her final date was November 20, 2020. Appellant created four individual goals to demonstrate responsibility and insight regarding the Agency's concerns, and eleven program goals creating safety and stability for the Children. Appellant achieved zero out of the four individual goals and one out of eleven program goals. Appellant also had to take a health and safety medical care pre-test and post-test. The pre-test is taken right before the class, and the post-test is given at a previously undisclosed time to test participant's retention of topics. Appellant scored a two out of thirty-nine, or five percent, on the pre-test, and seven out of thirty-nine, or eighteen percent, on the post-test.

**{¶42}** In addition, participants also take a comprehensive pre-test and post-test going over all topics covered in class. Appellant scored a thirty-six out of 142, twenty-five percent, on the pre-test, and sixty-seven out of 192, thirty-five percent, on the post-test.

{¶43} Every Friday during the program participants engage in visitations with their children in an observed environment. Over the course of the program Kiggans observed Appellant pulling her children by the arms. Kiggans told Appellant to lift children by their bodies and not arms. Appellant argued with Kiggans, saying she was not pulling hard on the Children's arms.

{¶44} During the same visit Appellant took hold of one of her child's legs attempting to show Kiggans the child had the wrong shoe size. The child tried to squirm out of Appellant's lap, and Appellant did not let go twisting of the child's leg. Appellant became frustrated because she wanted to explain the shoe size was wrong, but Kiggans criticized her for not paying attention to her child's reaction. While frustrated, Appellant did not remain calm, which startled the child.

{¶45} Kiggans observed that Appellant struggled to divide her attention amongst the Children. When all three were present, Appellant focused mainly on the younger children and engaged little with T.G. Kiggans created a goal to address the lack of engagement with T.G.; however, Appellant did not implement any behavior to achieve the goal. Appellant displayed minimal effort towards engaging with T.G.

{¶46} Appellant's first individual goal was to address her past physical punishment with the Children. However, when asked to list general changes she planned to make in how she disciplined her children, she could not list any. Appellant continued to indicate she would teach her children not to trust men who were abusive. Appellant did not respond to any attempts to bring the conversation back to addressing the goal.

{¶47} Appellant's second individual goal was not accepted because of Appellant's description and use of medical marijuana. Appellant was to demonstrate how she was

using medical marijuana within the parameters of the law and her prescription. Appellant was travelling to Michigan to buy her marijuana and smoking in the morning and at night. However, it is not legal to transport marijuana across state lines, and in Ohio medical marijuana participants are only permitted to ingest or vape medical marijuana. Therefore, Appellant did not demonstrate she was appropriately using her prescription.

**{¶48}** Appellant's third individual goal was to take responsibility for M.G.1.'s broken arm such as not offering proper supervision, and to have gotten M.G.1. medical attention promptly. Appellant never took responsibility.

**{¶49}** Appellant's fourth individual goal was to demonstrate bonding activities with T.G during visitations and assist T.G. in healing from the traumatic experiences T.G. has endured while under Appellant's care. Appellant minimally engaged with T.G. saying she would send T.G. to counseling and take T.G. to Chuck E. Cheese as her full plan in assisting with T.G. in healing from any trauma T.G. endured. As children need to process traumatic situations they have endured under their parent's care with the parent, sending T.G. to counseling alone and then taking T.G. to Chuck E. Cheese would not benefit T.G.'s mental health.

**{¶50}** The levels of completion for the program are: completion, participation, attendance, and non-compliance. Completion means the participant successfully completed most of the course requirement. Participation means the participant successfully completed an average amount of requirements. Attendance indicates the participant has completed only a minimal amount of requirements. Finally, non-compliance means the participant failed to complete even a minimal amount of requirements. Appellant received a non-compliance certificate.

**{¶51}** During the discharge meeting Kiggans reviewed test scores, classroom observations, and concerns during visitation. Appellant yelled during the meeting, ranting about how a judge forced a Goodwill employee to apologize to her in the past.

**{¶52}** Next, Marisela Ortega Gomes testified she is employed at Lighthouse Family Center as a clinical counselor. Ortega Gomes has been T.G.'s counselor since May of 2020. Ortega Gomes brought Appellant into the counseling session for T.G. to talk to Appellant about how T.G. was feeling. Ortega Gomes indicated that Appellant needed to apologize to T.G. for blaming T.G. for hurting M.G.1. T.G. believes she did not injure M.G.1., but is feeling guilt over being blamed for it. Ortega Gomes wanted Appellant to apologize to T.G. for making her feel that way.

**{¶53}** The Agency then rested its case.

**{¶54}** Nikki Reed, the Children's second Guardian ad Litem, testified she was appointed in March of 2021. Reed testified Appellant was employed throughout her period as Guardian ad Litem. Reed continued that the visits she observed between Appellant and the Children were all appropriate. Reed spoke with Father, who said he had no concerns about Appellant's parenting abilities. Reed also does not know who broke M.G.1.'s arm.

**{¶55}** On cross-examination Reed testified that Appellant's boyfriend had taken a video of T.G. The video was difficult to understand from M.G.2. screaming in the back ground. However, Reed indicated that it appeared T.G., age six, was being coerced into admitting she had done something wrong.

**{¶56}** Appellant testified she lives in Canton, Ohio with her boyfriend. Appellant works as a home health care aide. Appellant believes her children are being taken from

her for something she did not do. Appellant testified Father used to abuse her in front of T.G. Appellant accused her previous caseworker of stopping her joint parenting sessions.

**{¶57}** Appellant's testimony included denying she broke M.G.1.'s arm, denying she was upset at visitations, and denying she twisted her child's leg to get a look at the shoe. She did not feel like Goodwill assisted her at all, and that she was singled out by staff. Appellant then made the accusation that only the white parents who attended her Goodwill class got their children back. Appellant also denied that her and the twins are not bonded. Appellant says she discovered bruises on one child and was never told the cause of the bruises.

**{¶58}** After Appellant finished parenting classes, Ortega Gomes reached out again to see if Appellant wanted to restart joint counseling with T.G. Appellant indicated she did not understand why she would need to go to the sessions. Ortega Gomes decided it would be best, due to Appellant's hesitation, not to restart the joint counseling.

**{¶59}** On October 1, 2021, the trial court issued its finding of facts, granted permanent custody of the Children to the Agency, and terminated the parental rights of Appellant. Appellant appeals that decision.

**ASSIGNMENTS OF ERROR**

**{¶60}** Thereafter, Appellant timely filed her notice of appeal. She raises the following four Assignments of Error:

**{¶61}** "I. MOTHER WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE THE TRIAL COURT COUNSEL FAILED TO FILE A MOTION TO EXTEND TEMPORARY CUSTODY OR A MOTION TO RETURN THE CHILDREN TO MOTHER PRIOR TO THE PERMANENT CUSTODY TRIAL.

**{¶62}** "II. THE TRIAL COURT ERRED BY ALLOWING LINDA CHAMBLISS TO TESTIFY TO HEARSAY EVIDENCE.

**{¶63}** "III. THE JUDGMENT OF THE TRIAL COURT THAT THE MINOR CHILDREN CANNOT AND SHOULD NOT BE PLACED WITH APPELLANT AT THIS TIME OR WITHIN A REASONABLE PERIOD OF TIME WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE.

**{¶64}** "IV. THE JUDGMENT OF THE TRIAL COURT THAT THE BEST INTERESTS OF THE MINOR CHILDREN WOULD BE SERVED BY THE GRANTING OF PERMANENT CUSTODY WAS AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

I.

**{¶65}** In Appellant's first Assignment of Error, Appellant argues she received ineffective assistance of counsel when her trial counsel failed to file a motion to extend temporary custody or a motion to return the Children to Appellant prior to the permanent custody trial. We disagree.

**{¶66}** To succeed on a claim of ineffectiveness, a defendant must satisfy a two-prong test found in *Strickand v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *State v. Reed*, 74 Ohio St.3d 534, 535, 660 N.E.2d 456, 458 (1996). Therefore, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show counsel's conduct so undermined the proper functioning of

the adversarial process that the trial cannot be relied upon as having produced a just result. *Id.*

**{¶67}** "There are countless ways to provide effective assistance in any given case. Even the best criminal defense attorneys would not defend a particular client in the same way." *Strickland* at 689. Therefore, we must determine if counsel acted "outside the wide range of professionally competent assistance." *Id.* at 690.

**{¶68}** In the case *sub judice*, Appellant argues trial counsel was ineffective because of a failure to file motions for an extension of temporary custody and/or motions to return the Children to Appellant. However, a filing of these motions is unnecessary. R.C. §2151.415 does not provide that a parent may file a request for an extension of temporary custody of the agency. *In re A.C. B.*, 11th Dist. Portage No. 2016-P-0065, 2017-Ohio-4127, ¶34. Therefore, counsel would not be deficient for failing to file such a motion. As part of the permanent custody hearing, the trial court must find the Children could not or should not be placed with either parent within a reasonable period of time. R.C. §2151.414. This finding precludes granting a motion to return the Children to Appellant. Therefore, counsel would not be deficient not filing such a motion.

**{¶69}** As noted above, the motion for extension of temporary custody and motion to return the Children to Appellant were unnecessary. As such Appellant has failed to demonstrate trial counsel's performance fell below an objective standard of reasonable representation.

**{¶70}** Appellant's First Assignment of Error is overruled.

**II.**

**{¶71}** In Appellant's Second Assignment of Error, Appellant argues Chambliss's testimony should not have been allowed as to facts that occurred outside of her direct involvement in the case because she had no personal knowledge of those facts. We disagree.

**{¶72}** "Hearsay" is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C).

**{¶73}** In *In re Z.T.*, 8th Dist. Cuyahoga No. 88009, 2007-Ohio-827, ¶21, the Eighth District found that a social worker's testimony as to the contents of the agency's case file is an exception to the rule against hearsay according to Evid.R. 803(6) and Evid.R. 803(8). The Eighth District stated:

> Evid.R.803(6) creates a hearsay exception for records kept in the ordinary course of business. *See In re McCullough* (Dec. 6, 2001), Cuyahoga App. No. 79212. Likewise, Evid.R. 803(8) creates a hearsay exception for public records and reports which set forth the activities of an agency or office and contain matters observed which, pursuant to a duty of law, the agency or office has a duty to report. *See In re Brown*, [sic] Athens App. No. 06CA4, 2006-Ohio-2863, at ¶32, fn.1; *In re Garvin* (June 15, 2000), [sic] Cuyahoga App. Nos. 75329 and 75410. *Id.*

**{¶74}** Under either exception, a social worker's testimony concerning records kept by the agency, statements made by a parent, and reports taken during the course of the agency's investigation, are admissible because the contents of her file, including the

reports against the family, had been compiled as part of the Agency's activities. *Matter of D.M.*, 5th Dist. Guernsey No. 18 CA 18, 2018-Ohio-4737, ¶27. As such, a case worker in a supervisory capacity may testify to the contents of the case file.

**{¶75}** In addition, Appellant objects to the portion of testimony where Chambliss is reading from a judgment entry already stipulated to by the defense and in the record. The problem with Appellant's argument is that Appellant stipulated to their admission. A stipulation is a voluntary agreement between opposing counsel concerning the disposition of some relevant point to avoid the necessity for proof of issue. *Julian v. Creekside Health Ctr.*, 7th Dist. No. 03MA21, 2004-Ohio-3197, ¶54. Once entered into by the parties and accepted by the court, a stipulation is binding upon the parties. *Id.*

**{¶76}** A stipulation to the admissibility of evidence precludes any subsequent challenge or claim of error relating to the stipulated evidence. *See Lentz v. Schnippel*, 71 Ohio App.3d 206, 211, 593 N.E.2d 341, 344 (3rd Dist.1991); *Dubecky v. Horvitz*, 64 App.3d 726, 742, 582 N.E.2d 1087, 1097 (11th Dist.1990). Therefore, because Appellant stipulated to the admission of the judgment entries, she is precluded from challenging its admissibility before this Court on appeal.

**{¶77}** Furthermore, assuming *arguendo*, an error was committed in allowing Chambliss to read from judgment entry's already in the record, we find that error to be harmless as the information was already stipulated to and in the record.

**{¶78}** Appellant's Second Assignment of Error is overruled.

### III., IV.

**{¶79}** In Appellant's Third and Fourth Assignments of Error, Appellant argues the trial court's findings that the Children cannot and should not be placed with Appellant

within a reasonable period of time and that, in the best interest of the Children, permanent custody is granted to the Agency, was against the manifest weight and sufficiency of the evidence. We disagree.

**{¶80}** Sufficiency of the evidence is a test of adequacy to determine if the evidence is legally sufficient to sustain a decision. This is a question of law to be reviewed de novo by this Court. *State v. Thompson*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541, 546 (1997).

**{¶81}** As an appellate court, we neither weigh the evidence nor judge the credibility of the witnesses. Our role is to determine whether there is relevant, competent, and credible evidence upon which the fact-finder could base its judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA-5758, 1982 WL 2911 (February 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).

**{¶82}** On review for manifest weight, the standard in a civil case is identical to the standard in a criminal case: a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine "whether in resolving conflicts in the evidence, the jury [or finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction [decision] must be reversed and a new trial ordered." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). *See also*, *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541; *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972

N.E.2d 517. In weighing the evidence, however, we are always mindful of the presumption in favor of the trial court's factual findings. *Eastley* at ¶2.

**{¶83}** Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evident in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

**{¶84}** R.C. §2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. §2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency or private child placing agency that has temporary custody of the child or has placed the child in long-term foster care.

**{¶85}** Following the hearing, R.C. §2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and no relatives of the child are able to take permanent custody; or (d) the child has been in temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

**{¶86}** In determining the best interest of the child at a permanent custody hearing, R.C. §2151.414(D) mandates the trial court must consider all relevant factors, including, but not limited to, the following: (1) the interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child; (2) the wishes of the child as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child; (3) the custodial history of the child; and (4) the child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody.

**{¶87}** Therefore, R.C. §2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**{¶88}** In the case *sub judice*, the trial court found that the statutory requirement of R.C. §2151.414(B)(1)(a) through (d) have been met. The court found by clear and convincing evidence that the Children had been in temporary custody of the Agency for a period of twelve or more of the past twenty-two-month period. The Agency presented testimony showing the Agency met the burden of R.C. §2151.414(B)(1)(d). The trial court also found, by clear and convincing evidence, that the Children could not be placed with either parent within a reasonable period of time or should not be placed with the either parent.

**{¶89}** No party contested that the Children could not be placed with their father. Appellant argues the trial court found that the minor children could not be placed with Appellant is against the manifest weight and sufficiency of the evidence. Under R.C. §2151.414(E), the trial court must consider all relevant evidence before making this determination. The trial court is required to enter such a finding if it determines, by clear and convincing evidence, that one or more of the factors enumerated in R.C. §2151.414(E)(1) through (16) exist.

**{¶90}** Here, the trial court found Appellant failed to successfully complete and implement her Goodwill parenting class, Appellant admitted to using marijuana for medicinal purposes, but failed to comply with drug testing after April of 2021. Appellant refused to acknowledge her role in M.G.1.'s broken arm, instead blaming T.G. for it. Appellant needed to admit that the injury occurred due to her lack of supervision over her children. She did not.

**{¶91}** Appellant scored a five percent on the Health & Safety Medical Care pretest, and Appellant score an eighteen percent on her post-test. Appellant scored a twenty-five percent on her total class pretest, and Appellant scored a thirty-five percent on her total class post-test. Appellant argues the administrator of the test needed to provide more assistance, more than offering to read and ensure Appellant understood each question, due to her low IQ. However, Appellant fails to site to any legal authority to support this contention.

**{¶92}** Based on the foregoing, we find the "first-prong" burden as required by R.C. §2151.414(B)(1)(a) through (d) has been met.

**{¶93}** Next, we must address the issue of best interest. "The discretion which the juvenile court enjoys in determining whether an order of permanent custody is in the best interest of [the children] should be accorded the utmost respect, given the nature of the proceeding and the impact the court's determination will have on the lives of the parties concerned." *In re Mauzy Children*, 5th Dist. No. 2000CA00244, 2000 WL1700073 (Nov. 13, 2000), citing *In re Awkal*, 95 Ohio App.3d 309, 316, 642 N.E.2d 424 (8th Dist.1994).

**{¶94}** In the case *sub judice*, the trial court determined it was in the best interest of the Children to be placed in the permanent custody of the Agency pursuant to R.C. §2151.414(D), and we agree.

**{¶95}** The Agency presented testimony that while M.G.1. and M.G.2. are developmentally on target, T.G. is developmentally delayed. T.G., M.G.1., and M.G.2. are all placed together in the same foster home, and they have bonded to the foster parents and each other. While T.G. is bonded with Appellant, M.G.1. and M.G.2. are not bonded with Appellant. The foster family wants to adopt all three children.

**{¶96}** The Agency also presented testimony that M.G.1. broke her arm. Appellant, who was home at the time, was not in the room but blames T.G. for the break. However, a medical assessment showed that it was not plausible that T.G. broke M.G.1.'s arm. Both Appellant's mother and boyfriend were in the room at the time. Despite being told that Appellant's blaming of the broken arm on T.G. was harmful to T.G., Appellant continued to do so.

**{¶97}** The Agency also presented evidence that Appellant tested positive for THC and subsequently failed to comply with further drug testing. Appellant admitted to using marijuana but does have a medical marijuana card. However, Appellant obtains her

medical marijuana from Michigan and smokes it from a bowl every day. Appellant is required to obtain her marijuana from dispensaries in the State of Ohio and should either use the vape or edible form of marijuana to ensure correct dosage.

{¶98} Therefore, we find that the trial court's decision finding that the Children could not or should not be placed with Appellant or Father within a reasonable period of time was not against the manifest weight or sufficiency of the evidence, and that a grant of permanent custody to the Agency was in the Children's best interest.

{¶99} Appellant's Third and Fourth Assignments of Error are overruled.

{¶100} For the foregoing reasons, the judgment of the Court of Common Pleas, Juvenile Division of Stark County, Ohio, is hereby affirmed.

By: Wise, John, J.

Wise, Earle, P. J., and

Delaney, J., concur.

JWW/br 0405